**WOODWARD & DICKERSON, INC.,**

v.

**YOO HOO BEVERAGE COMPANY, INC., Defendant and Third Party Plaintiff,**

v.

**YOO HOO (AFRICA), LTD., Third Party Defendant.**

**Civ. A. No. 78–4160.**

United States District Court, E. D. Pennsylvania.

Nov. 26, 1980.

---

Walter R. Milbourne, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., for plaintiff.

Leonard J. Bucki, Wolf, Block, Schorr & Solis–Cohen, Philadelphia, Pa., for defendant and third party plaintiff.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

The plaintiff, Woodward & Dickerson, Inc., instituted this action for damages against the defendant, Yoo Hoo Beverage Company, Inc. (Beverage) for the alleged breach of three contracts involving the sale of cocoa powder by the plaintiff to Beverage. Beverage joined Yoo Hoo Africa, Ltd. (Africa) as a third party defendant pursuant to Fed.R.Civ.P. 14. This action, which was based on diversity jurisdiction, was tried before a jury from April 21, 1980 to April 29, 1980. The jury answered interrogatories that resulted in a verdict in favor of the plaintiff.[1] Beverage subsequently filed a motion for a judgment n. o. v. and/or a new trial. After carefully considering all of the grounds alleged by Beverage, this Court has determined that it will grant Beverage's motion for a judgment n. o. v. in connection with Count II of the complaint, and will deny its motion in all other respects.

Motions for a new trial require the exercise of discretion by the Court, whose "duty is essentially to see that there is no miscarriage of justice." 6A *Moore's Federal Practice* ¶ 59.08[5], at 59–160 (footnote omitted) (2d ed. 1974); *Thomas v. E. J. Korvette, Inc.*, 476 F.2d 471, 474–75 (3d Cir. 1973). The jury's verdict may be set aside only if manifest injustice will result if it were allowed to stand. The Court may not substitute its own judgment for that of the jury merely because the Court may have reached a different conclusion. To grant a motion for judgment n. o. v., the Court must find as a matter of law that the plaintiff failed to adduce sufficient facts to justify the verdict. *Neville Chemical Co. v. Union Carbide Corp.*, 422 F.2d 1205, 1210 (3d Cir.), *cert. denied*, 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970). Such a motion "may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment." 5A *Moore's, supra*, ¶ 50.07[2], at 50–77 (footnote omitted); *Korvette, supra*, at 474.

### I.   *The Evidence at Trial*

The evidence at trial which was not controverted showed the following: The plaintiff is a Pennsylvania corporation with its principal place of business in Pennsylvania. It is engaged in the purchase and sale of large quantities of cocoa powder. Edward Staffenberg was the manager of the plaintiff's food products division responsible for the purchase and sale of cocoa powder. He commenced working for the plaintiff in 1975, and stated that for a number of years prior to that date the plaintiff had been selling cocoa powder to Beverage, a Delaware corporation with its offices and principal place of business in Carlstadt, New Jersey. Beverage is a going concern which continues to use large amounts of cocoa powder to manufacture a chocolate drink called "Yoo Hoo", which it distributes through franchisees. Africa is a franchisee of Beverage, and all of its stock is owned by a Mr. Eric Barischoff. Africa is not a going concern. There is no common equity ownership between Beverage and Africa.

The sales of cocoa powder between the plaintiff and Beverage were effectuated through the use of a food broker named

---

1. Africa did not appear at trial to defend the third party claim against it by Beverage. After the Court entered judgment in favor of the plaintiff and against Beverage for $361,638.00, Beverage moved for a default judgment against Africa in the same amount. The Court granted this motion and entered judgment in favor of Beverage and against Africa for $361,638.00.

Jack Wittpenn. Dr. Eric Hotelling, the senior vice–president of Beverage, was in charge of purchasing cocoa powder for Beverage. He was the only person at Beverage with whom Mr. Staffenberg and Mr. Wittpenn dealt.

In September 1976, Dr. Hotelling asked Mr. Wittpenn if he could place a contract for cocoa powder in the name of a Mr. Agar, a cocoa broker. The plaintiff advised Mr. Wittpenn that it did not enter into such contracts with anyone other than users of cocoa powder. Shortly thereafter Dr. Hotelling began to place some contracts for the purchase of cocoa powder in the name of Africa while continuing to make purchases of cocoa powder in the name of Beverage.

Dr. Hotelling negotiated all contracts between the plaintiff and Africa and the plaintiff and Beverage with Mr. Wittpenn, and always issued delivery instructions when a shipment of cocoa powder was ready for delivery. When Dr. Hotelling placed an order for cocoa powder, whether such order was in the name of Beverage or Africa, Mr. Staffenberg would send a printed form of contract to Mr. Wittpenn, which contract would be in the name of Africa or Beverage, and Mr. Wittpenn would then obtain signatures on the contract. Contracts between the plaintiff and Beverage were issued in the name of "YOO HOO BEVERAGE CO., 600 Commercial Ave., Carlstadt, N.J. 07072," whereas contracts between the plaintiff and Africa were issued in the name of "YOO HOO AFRICA, LTD., 511 New Bridge Ave., East Meadow, L.I., N.Y." Between September 1976 and mid–August 1977, which is the period immediately prior to the events in late August and September of 1977 for which the plaintiff claims payment in this action, Dr. Hotelling placed three cocoa powder contracts with the plaintiff in the name of Beverage and five contracts with the plaintiff in the name of Africa. In connection with these contracts, however, there were two occasions when Dr. Hotelling instructed the plaintiff that a shipment of cocoa powder covered by a contract with Beverage should be delivered to Africa and invoiced to Africa. There was also one occasion where Dr. Hotelling instructed the plaintiff that a shipment of cocoa powder covered by a contract with Africa should be delivered to Beverage and invoiced to Beverage.

The records of the plaintiff show that it maintained separate accounts for Beverage and Africa, that the two companies were billed separately, and that the plaintiff had different addresses and telephone numbers for Beverage and Africa. Checks issued by Beverage in payment for the cocoa powder which the plaintiff invoiced to it were drawn on a New Jersey bank. Checks issued by Africa in payment for the cocoa powder invoiced to it were drawn on the Nassau, Bahamas branch of the Royal Bank of Canada.

In connection with the sales of cocoa powder for which the plaintiff claims payment, four documents were admitted into evidence (Exhibits P19, P20, P35, and P49). Exhibit P19 is a printed form of sales contract dated September 20, 1977. The seller is "WOODWARD & DICKERSON, INC." The buyer is "YOO HOO BEVERAGE CO., 600 Commercial Ave., Carlstadt, N.J. 07072." The contract covers the sale of 120,000 pounds of cocoa powder to be delivered in three separate shipments–one promptly, one in November 1977, and one in December 1977. Mr. Barischoff signed the contract as follows: "YOO HOO BEVERAGE CO., by Eric Barischoff." Exhibit P35 is identical to Exhibit P19 except that the buyer's name is changed from "YOO HOO BEVERAGE CO., 600 Commercial Ave., Carlstadt, N.J. 07072" to "YOO HOO AFRICA, LTD., 511 Newbridge Ave., East Meadow, N.Y. 11554." Mr. Barischoff signed Exhibit P35 as follows: "YOO HOO AFRICA, LTD., by Eric Barischoff." Exhibit P20 is a similar printed form dated September 20, 1977. The seller is "WOODWARD & DICKERSON, INC." The buyer is "YOO HOO AFRICA, LTD., 511 Newbridge Ave., East Meadow, N.Y. 11554." This contract covers the sale of 40,000 pounds of cocoa powder to be delivered in one shipment in December 1977. Mr. Barischoff signed this contract as follows: "YOO HOO AFRICA,

LTD., by Eric Barischoff." Exhibit P49 is the same type of form contract, dated August 23, 1977. The seller is "WOODWARD & DICKERSON, INC." The buyer is "YOO HOO AFRICA, LTD., 511 Newbridge Ave., East Meadow, N.Y. 11554." This contract covers the sale of 40,000 pounds of cocoa powder to be delivered in one shipment between September and December of 1977. Dr. Hotelling signed the contract as follows: "YOO HOO AFRICA, LTD., by E. B. Hotelling."

The controverted evidence at trial was as follows: On or about September 15, 1977, Mr. Staffenberg, Mr. Wittpenn and Dr. Hotelling met for lunch in Carlstadt, New Jersey. Both Mr. Staffenberg and Mr. Wittpenn testified that at this meeting Dr. Hotelling orally ordered three 40,000 pound shipments of cocoa powder for Beverage, one shipment to be delivered immediately, while the other two shipments were to be delivered in November and December. Mr. Staffenberg and Mr. Wittpenn also testified that at the same meeting Dr. Hotelling orally placed an order for one shipment of cocoa powder in the name of Africa, which was to be delivered in December. Dr. Hotelling's recollection of what took place at the meeting contradicted the testimony of Mr. Staffenberg and Mr. Wittpenn. Dr. Hotelling testified that at this meeting he ordered only three shipments of cocoa powder and that the three shipments were for Africa. He also testified that he informed Mr. Staffenberg and Mr. Wittpenn that Beverage did not need any cocoa powder at that time. He claims that he was asked if Africa would be in a position to take the three shipments and he responded affirmatively. Shortly after this meeting, Dr. Hotelling received two sales contracts from the plaintiff, one of which was Exhibit P19, and the other Exhibit P20. As previously stated, Exhibit P19 identifies the buyer as Yoo Hoo Beverage Co., and covers three shipments of cocoa powder totalling 120,000 pounds. It is signed as follows: "YOO HOO BEVERAGE CO., by Eric Barischoff." Exhibit P20 identifies the buyer as Yoo Hoo Africa, Ltd., and covers one 40,000 pound shipment of cocoa powder. It is

signed as follows: "YOO HOO AFRICA, LTD., by Eric Barischoff." Dr. Hotelling testified that Exhibit P19 was incorrect in that the buyer should have been designated as Africa, and that he communicated this fact to Mr. Wittpenn.

Mr. Staffenberg testified that the first shipment of cocoa powder covered in Exhibits P19 and P35 was received by the plaintiff in late September, and that Dr. Hotelling directed it to be delivered to Beverage. There is no dispute that Beverage paid for this shipment. Mr. Staffenberg also testified that when the two additional shipments of cocoa powder described in Exhibits P19 and P35 arrived, Dr. Hotelling directed these shipments to be placed in a public warehouse in Camden, New Jersey. Dr. Hotelling testified that he did not remember giving such directions.

In March 1978, Mr. Staffenberg and Mr. Wittpenn met with Dr. Hotelling in Carlstadt and discussed with him payment for the two shipments which were still in the warehouse. Mr. Staffenberg testified that Dr. Hotelling informed him that he had placed the order for these two shipments in the name of Africa, and that the sales contract should have been in the name of Africa. Mr. Staffenberg also testified that Dr. Hotelling stated he no longer had authority to sign contracts in the name of Africa, and that Mr. Barischoff, the president of Africa, would sign all of Africa's contracts in the future. The plaintiff subsequently reissued the same contract in the name of Africa (Exhibit P35), and Mr. Barischoff signed this contract as well as the contract set forth in Exhibit P20. Payment for the three shipments of cocoa powder described in Exhibits P20 and P35 was never made by either Africa or Beverage.

## II. Theories of Recovery

The plaintiff's complaint consists of two counts. In Count I, the plaintiff claims that Beverage owes it $240,000.00 plus interest for two of the three shipments of cocoa powder described in Exhibits P19 and P35. In Count II, the plaintiff claims that Beverage owes it $88,800.00 plus interest

for the two shipments of cocoa powder described in Exhibits P20 and P49.[2] At the trial of this action, the plaintiff argued a number of different theories of recovery. With respect to Count I only, the plaintiff argued that an oral contract was entered into between the plaintiff and Beverage at the meeting of Mr. Staffenberg, Mr. Wittpenn and Dr. Hotelling on September 15, 1977. Beverage contended that no oral contract was made at that meeting but if such an oral contract were made, it was unenforceable under the Statute of Frauds. 13 Pa.Cons.Stat.Ann. § 2201 (1979). The plaintiff, however, asserted that the oral contract was taken out of the Statute of Frauds because: (1) Beverage received and accepted the goods subject to the contract, id. § 2201(c)(3); and (2) the sales contract sent by the plaintiff to Dr. Hotelling was a writing in confirmation of the contract, id. § 2201(b). Beverage further contended that an oral contract had never been pleaded by the plaintiff and that the reissuance of this contract by the plaintiff in the name of Africa was a novation. The jury answered in the affirmative the following three interrogatories in connection with Count I:

1. Do you find from a preponderance of the evidence that there was an oral contract between the plaintiff and Beverage for the two shipments of cocoa powder for which the plaintiff claims payment in Count I?

2. Do you find from a preponderance of the evidence that Exhibit P19 confirms the oral contract between the plaintiff and Beverage which you found to exist by your answer of "Yes" to Question 1?

3. Do you find from a preponderance of the evidence that there was a receipt and acceptance by or at the direction of Beverage of the two shipments of cocoa powder for which you found an oral contract by your answer of "Yes" to Question 1?

The jury thus found that an oral contract was entered into between the plaintiff and Beverage, that Exhibit P19 was a writing sufficient to confirm the oral contract between the plaintiff and Beverage, and that there was a "receipt and acceptance" by Beverage of the two shipments of cocoa powder for which the plaintiff claimed payment in Count I.

With respect to both Count I and Count II, the plaintiff contended that it was entitled to recover against Beverage under the instrumentality doctrine, the theory of apparent authority, and the theory of agency by estoppel. The jury answered in the affirmative the following three interrogatories in connection with both Count I and Count II:

Do you find from a preponderance of the evidence that, under the rule of apparent authority, Beverage authorized Africa to enter into the three contracts in the name of Africa on behalf of Beverage covering the four shipments of cocoa powder?

Do you find from a preponderance of the evidence that Beverage controlled Africa to such an extent that Africa was a mere instrumentality of Beverage, and that Beverage misused its control of Africa for the benefit of Beverage, thereby causing the plaintiff to not be paid for the four shipments of cocoa powder?

Do you find from a preponderance of the evidence that, under the theory of estoppel, Beverage is estopped from denying that Africa acted as its agent in connection with the purchase of the four shipments of cocoa powder covered by the three written contracts in the name of Africa?

The jury thus found that Beverage had cloaked Africa with apparent authority to enter into the three contracts in the name of Africa on behalf of Beverage covering the four unpaid shipments of cocoa powder, that Africa was a mere instrumentality of

**2.** The plaintiff bought these two shipments of cocoa powder back from Africa in March 1978. The amount of the claim in Count II represents the difference between the $2.82 per pound price which Africa originally agreed to pay for the cocoa powder and the credit given to Africa by the plaintiff when it purchased the cocoa powder from Africa in March 1978 for approximately $1.70 per pound.

Beverage, and that Beverage was estopped to deny that Africa acted as its agent in connection with the four shipments of cocoa powder covered by the three written contracts in the name of Africa.

### III.  *The Oral Contract*

■ In connection with Count I only, Beverage contends that since the plaintiff did not allege an oral contract in the complaint, this theory of recovery should not have been submitted to the jury. Although the complaint is far from a model of a well drafted pleading in terms of the theories of recovery presented, Count I does allege that an oral agreement was entered into between the plaintiff and Beverage at the lunch meeting of Mr. Staffenberg, Mr. Wittpenn, and Dr. Hotelling on September 15, 1977, and it also seeks recovery on this contract. Furthermore, the plaintiff's oral contract theory was clearly set forth in the final pretrial order, which was filed of record after being signed by the Court and counsel for both parties. Pursuant to Local Rule 21(d), the final pretrial order "supersede[s] all prior pleadings in the case." The submission of interrogatory number one (1) to the jury was therefore proper.

■ With respect to this first interrogatory, the Court charged the jury in part as follows:

First, a contract is a promise or set of promises for the breach of which the law gives a remedy or the performance of which the law in some way recognizes a duty.

Now, a contract to be binding must include a manifestation of mutual assent to the terms and conditions of the contract. You probably heard this referred to many times as the meeting of the minds. There must be a meeting of the minds. And there can be no contract if only one party intends to be bound.

I should point out that since intent is seldom susceptible to direct proof insofar as it relates to a person's state of mind, the law presumes that one intends the natural and probable consequences of one's acts. The meeting of minds or the

mutual manifestation of intent may be made wholly or partly by written or spoken words or by other acts or conduct, and an internal or unexpressed intention not to be bound is ineffective.

Now, in determining whether or not there was any contract, you must decide whether or not there was a meeting of the minds between the parties with respect to the terms of the alleged oral agreement and a present intention to be bound, as I have tried to explain that to you. (N.T. 6.110–.111).

As previously stated, both Mr. Staffenberg and Mr. Wittpenn testified that Dr. Hotelling orally ordered three shipments of cocoa powder in the name of Beverage at their lunch meeting on September 15, 1977. Although Dr. Hotelling's testimony contradicted the testimony of Mr. Staffenberg and Mr. Wittpenn, there was more than sufficient evidence in the record, viewed in the light most favorable to the plaintiff, from which the jury could reasonably conclude that there was an oral contract between the plaintiff and Beverage for the two shipments of cocoa powder for which the plaintiff claims payment in Count I.

■ Beverage also claims that interrogatory numbers two (2) and three (3) were improperly submitted to the jury. Interrogatory number two (2) dealt with whether the sales contract sent by the plaintiff to Dr. Hotelling (Exhibit P19) was a confirmation of the oral contract, and the jury found that it was. This interrogatory dealt with section 2201(b) of the Pennsylvania Uniform Commercial Code, 13 *Pa.Cons.Stat. Ann.* § 2201(b) (1979), which provides:

Writing confirming contract between merchants.—Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (a) against such party unless written notice of objection to its contents is given within ten days after it is received.

In connection with interrogatory number two (2), the Court charged the jury in part as follows:

> Section 2[13 *Pa.Cons.Stat.Ann.* § 2201(b) (1979)] provides in part:
>
> > If within a reasonable time, a writing in confirmation of the contract and sufficient against the sender is received, and the party receiving it has reason to know its contents, it satisfies the requirements of that section I read to you, which was Section 1 [13 *Pa. Cons.Stat.Ann.* § 2201(a) (1979)], which said the contract had to be in writing.
> >
> > Now, the plaintiff claims that after the alleged oral contract was entered into between the plaintiff and Beverage, the plaintiff mailed Exhibit P–19. Now, I know you are going to have a pile of exhibits with you there. And I just want to quickly refer to them so you'll be able to identify them when you go out.
> >
> > .    .    .    .    .
> >
> > P–19 is on this form here, a sales contract dated September the 20th, and it is, on the face of it, between Woodward and Dickerson and Yoo Hoo Beverage, who is set forth as the buyer on this form.
> >
> > Now, you will have to determine whether the plaintiff has proven by a preponderance of the evidence that . . . Exhibit P–19 is a writing in confirmation of the alleged oral contract entered into between the plaintiff and Beverage.
> >
> > In other words, do these two documents, after you examine them, state that a binding, completed transaction was orally made? (N.T. 6.112–.113).

Exhibit P19 is clearly sufficient evidence from which a jury could reasonably conclude that there was confirmation of the oral contract between the plaintiff and Beverage. It is not required that a writing in confirmation of an oral contract "expressly state that it is sent in confirmation of the prior transaction." *Doral Hosiery Corp. v. Sav-A-Stop, Inc.*, 377 F.Supp. 387, 389 (E.D. Pa.1974).

■ Interrogatory number three (3) dealt with section 2201(c)(3) of the Pennsylvania Uniform Commercial Code, which provides that a contract is enforceable "with respect to goods . . . which have been received and accepted." 13 *Pa.Cons.Stat.Ann.* § 2201(c)(3) (1970). In connection with interrogatory number three (3), the Court charged the jury in part as follows:

> Section 3 [13 *Pa.Cons.Stat.Ann.* § 2201(c)(3) (1979)], and I'm just going to read a part of it to you, provides:
>
> > A contract which does not satisfy the requirements of Section 1 [13 *Pa.Cons. Stat.Ann.* § 2201(a) (1979)]—now, Section 1 is the one that says it has to be in writing, it says—is enforceable with respect to goods which have been received and accepted.
> >
> > Now, received and accepted means that the goods must be received and accepted by the buyer except where there has been a delivery of goods to a third-party at the direction of the buyer. Thus, a contract does not have to be in writing as required by the first section if the goods were received and accepted. (N.T. 6.114).

The jury, in affirmatively answering the interrogatory, found that Beverage had received and accepted the last two shipments under the oral contract for which the plaintiff claims payment in Count I. Mr. Staffenberg and Mr. Wittpenn testified that when the two shipments of cocoa powder arrived in November and December of 1977, respectively, Dr. Hotelling stated that Beverage was not ready to receive the shipments and directed the plaintiff to store the shipments in a public warehouse in Camden, New Jersey. Dr. Hotelling testified that he did not remember giving such directions. As the Court instructed the jury, under Pennsylvania law the directions of a buyer to deliver goods to a third party may be found to be a receipt and acceptance of goods which will take the oral contract out of the Statute of Frauds. *Brussel v. Maimon*, 111 Pa.Super. 54, 169 A. 242 (1933). *See also Industrial Molded Plastic Products, Inc. v. J. Gross & Son, Inc.*, 263 Pa.Super. 515, 398 A.2d 695 (1979). There was therefore sufficient evidence, viewed in a light most favorable to the plaintiff, from which a jury could reasonably conclude that Bever-

age "received and accepted" the two shipments of cocoa powder for which the plaintiff claims payment on the oral contract.

■ Finally, Beverage contends that it was error for the Court not to submit an interrogatory to the jury as to whether the issuance of the written contract in the name of Africa (Exhibit P35) was a novation which relieved Beverage from liability. The burden was on Beverage, however, to plead and prove a novation. *International Election Systems Corp. v. Shoup*, 452 F.Supp. 684 (E.D.Pa.1978), *aff'd mem.*, 595 F.2d 1212 (3d Cir. 1979); *Charles Kahn & Co. v. Sobery*, 355 F.Supp. 156 (E.D.Mo. 1972); *Yoder v. T. F. Scholes, Inc.*, 404 Pa. 242, 173 A.2d 120 (1961). Beverage did not raise the issue of novation in its answer or the final pretrial order. Furthermore, Beverage presented no evidence consistent with a novation. Dr. Hotelling testified that his order for the three shipments of cocoa powder was placed by him in the name of Africa, and that the plaintiff mistakenly issued the written contract covering these shipments in the name of Beverage. There was no testimony offered by Beverage that the contract was originally in the name of Beverage and that the parties subsequently agreed to substitute Africa in place of Beverage. Finally, Beverage did not request the Court to charge on novation. *Mazer v. Lipschutz*, 327 F.2d 42 (3d Cir. 1964), *cert. denied*, 385 U.S. 833, 87 S.Ct. 72, 17 L.Ed.2d 68 (1966).

For the reasons hereinabove set forth, the Court concludes that there is no basis upon which it can disturb the findings of the jury in connection with the jury's affirmative answers to the first three interrogatories, and that its refusal to submit an interrogatory to the jury in connection with a novation was not erroneous. The Court will, accordingly, deny Beverage's motion for a judgment n. o. v. in connection with Count I.

IV. *Instrumentality Doctrine*

■ The jury, in giving an affirmative answer to interrogatory number four (4), found that under the instrumentality doctrine Beverage controlled Africa to such an extent that Africa was a mere instrumentality of Beverage, and that Beverage misused its control of Africa for the benefit of Beverage, thereby causing the plaintiff not to be paid for the four shipments of cocoa powder. Beverage contends that the evidence was insufficient to support the jury's finding that Africa was a mere instrumentality of Beverage. For the reasons hereinafter set forth, the Court concludes that the evidence was insufficient to support the jury's finding that Africa was the mere instrumentality of Beverage.

With respect to the instrumentality doctrine, the Court charged the jury in part as follows:

Well, the law says a corporation is a distinct legal entity in the law. And one corporation is ordinarily not responsible for the debts, contracts or obligations of another corporation.

Now, this Instrumentality Theory says that a corporation may be held liable, found liable for the debts of another corporation when and if it dominates another corporation by controlling it, and it misuses it as a mere instrumentality or a conduct, I should say, conduit—conduit for its own business. And when there is such domination and control to the extent that the dominated corporation becomes a mere instrumentality of the dominant company, and there is a misuse of that domination and control, the dominant corporation may under some circumstances in the law be found liable for the debts of the company that it so dominates and uses for its own purposes.

. . . . .

In order for the Instrumentality Theory—I'm going to try to be more specific—to apply in this case, this legal action, the plaintiff must prove two elements that are necessary to set up an Instrumentality Theory, and he must prove those by a preponderance of the evidence.

The plaintiff must prove that Beverage controlled Africa to such an extent that Africa was a mere instrumentality of Beverage; and, in addition, the plaintiff

must prove that Beverage misused, as it were, its control of Africa for the benefit, its own benefit, the benefit of Beverage; and, thereby, caused the plaintiff not to be paid for the four shipments of cocoa for which the plaintiff is claiming payment in this lawsuit. (N.T. 6.120–.122).

There was no common equity ownership between Beverage and Africa, and there was no evidence that Africa was indebted at any time to Beverage. The evidence showed that the only connections between the two corporations are that Africa was a franchisee of Beverage and that Dr. Hotelling was an officer of both corporations. These two factors, standing alone, do not permit the invocation of the instrumentality doctrine. *Krivo Industrial Supply Co. v. National Distillers and Chemical Corp.*, 483 F.2d 1098 (5th Cir. 1973); *Botwinick v. Credit Exchange, Inc.*, 419 Pa. 65, 213 A.2d 349 (Pa.1965). Furthermore, both Dr. Geller, the president of Beverage, and Ms. Gaisor, the office manager of Beverage, testified that they did not know that Dr. Hotelling was the vice-president of Africa or that he was entering into cocoa powder contracts on behalf of Africa.

Dr. Hotelling testified and the deposition of Mr. Barischoff stated (portions of Mr. Barischoff's deposition were read into evidence due to his death prior to trial) that Africa, as a separate corporate entity, was purchasing cocoa powder to speculate on that market. Africa paid for these purchases from funds in its own bank account. Africa resold all of the cocoa powder it purchased, and there was no evidence that any profits resulting from Africa's purchases and resales were passed on to Beverage. Mr. Wittpenn always brokered the resale of cocoa powder by Africa, and received a commission of one half of the profit earned by Africa on the resale. Mr. Wittpenn testified that he looked only to Africa for collection of these resale commissions and that Mr. Staffenberg knew of this arrangement.

No one at Beverage, including Dr. Hotelling, ever represented to the plaintiff or Mr. Wittpenn that Beverage controlled Africa.

The testimony of Mr. Wittpenn and Dr. Hotelling clearly showed that Africa had separate corporate interests from Beverage and was not established by Beverage as a mere conduit. The evidence presented at trial, viewed in the light most favorable to the plaintiff, does not permit a jury to reasonably conclude that the plaintiff controlled Africa to such an extent that Africa was a mere instrumentality of Beverage, and that Beverage misused its control of Africa for the benefit of Beverage, thereby causing the plaintiff not to be paid for the four shipments of cocoa powder. We must therefore overturn the jury's affirmative answer to interrogatory number four (4).

## V. *Apparent Authority*

The jury, in giving an affirmative answer to interrogatory number five (5), found that under the theory of apparent authority Beverage had authorized Africa to enter into the contracts in question on behalf of Beverage. Beverage contends that the evidence presented at trial was insufficient to sustain the jury's finding as to apparent authority. For the reasons hereinafter set forth, the Court concludes that the evidence was insufficient to support the jury's finding of apparent authority.

With respect to apparent authority, the Court charged the jury in part as follows:

Now, apparent authority is the authority, that is well recognized in the law, which is the power to affect the legal relations of another by transactions with third parties, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons.

Now, apparent authority results from a manifestation by a party that another is his, her or its agent. The manifestation is being made to a third person and not when we deal with express authority, or implied authority, that's created by manifestations to the agent, and sometimes to the third party.

Now, here it is the conduct or manifestation of the principal, not the purported

agent, to the third party which creates apparent authority. To be more specific, in this case it's the conduct or the manifestation of Beverage, not the purported agent, which is Africa, to the third party, which is the plaintiff corporation, which creates apparent authority.

Now, you have to determine whether or not, on the basis of the evidence presented, whether the evidence presented by a preponderance demonstrates that such manifestations do exist.

Now, the principal must either intend to cause that third person to believe that the purported agent is authorized to act for him, or his conduct must be such that he should realize that such conduct is likely to create the belief in the mind of the third person that the purported agent is authorized to act for the principal.

I want to point out again: It's the basic requirement for the creation of apparent authority that the principal be responsible for the information which comes to the mind of the third person.

Now, however, I want to point out to you that apparent authority exists only to the extent that it's reasonable for that third person dealing with the alleged agent to believe that the agent has been so authorized.

I could sum up by saying that in connection with this, apparent authority, the doctrine, that in order to recover under the apparent authority doctrine, the plaintiff must prove by a preponderance of the evidence that Beverage, as the principal, by its written or spoken word, or by its conduct, reasonably interpreted, caused the plaintiff to believe that Beverage authorized Africa to enter into the three contracts, which are in the name of Africa, on behalf of Beverage for the purpose of the four shipments of cocoa powder. [Restatement (Second) of Agency, § 27]. (N.T. 6.125–.127).

There was no evidence presented at trial that anyone connected with Beverage, by their written or spoken words or conduct, reasonably interpreted, caused the plaintiff to believe that Beverage had authorized Africa to enter into cocoa powder contracts on its behalf. Dr. Hotelling was the only person at Beverage with whom Mr. Staffenberg and Mr. Wittpenn dealt, and Dr. Hotelling testified that he never told Mr. Wittpenn that Africa and Beverage were the same corporation or that Beverage would be responsible for the debts of Africa. As previously stated, both Dr. Geller and Ms. Gaisor, the president and office manager of Beverage, testified that they did not even know that Dr. Hotelling was the vice–president of Africa or that he was purchasing cocoa powder on behalf of Africa until the plaintiff claimed payment from Beverage for the cocoa powder described in Counts I and II. Dr. Hotelling testified that no one at Beverage knew he was an officer of Africa or that he was purchasing cocoa powder on behalf of Africa.

Mr. Wittpenn testified that he knew Africa and Beverage were different corporations because he held stock in Beverage but not in Africa, which he stated was a closed corporation.[3] He testified that it sounded to him like Beverage and Africa "were together" (N.T. 3.10), and that when Mr. Staffenberg asked him about Africa, Mr. Wittpenn stated: "Yoo Hoo Africa is Yoo Hoo." (N.T. 2.20). Mr. Staffenberg testified that he was not certain that Beverage and Africa were different corporations, although the plaintiff maintained separate accounts for Beverage and Africa and always received payment for these accounts by checks written by the corporation in whose name the account was maintained. Neither Mr. Staffenberg nor Mr. Wittpenn testified that they ever inquired of Dr. Hotelling with respect to the relationship between Beverage and Africa, whether Beverage would be responsible for the debts of

---

**3.** Beverage contended at trial, and asked that the Court charge the jury, that any knowledge of Mr. Wittpenn with respect to Beverage and Africa should be attributed to the plaintiff. In light of our disposition of Beverage's motion, we need not address this issue. Furthermore, Mr. Wittpenn testified at trial that he disclosed all of his business dealings with Dr. Hotelling and Africa to Mr. Staffenberg.

Africa, or whether Beverage authorized Africa to enter into cocoa powder contracts on its behalf. The evidence, viewed in a light most favorable to the plaintiff, does not permit a jury to reasonably conclude that under the theory of apparent authority Beverage authorized Africa to enter into three contracts in the name of Africa on behalf of Beverage covering the four shipments of cocoa powder for which the plaintiff claims payment in Counts I and II. We must therefore overturn the jury's affirmative answer to interrogatory number five (5).

## VI. *Estoppel*

■ The jury, in giving an affirmative answer to interrogatory number six (6), found that Beverage was estopped from denying that Africa acted as its agent in connection with the purchase of the four shipments of cocoa powder covered by the three written contracts in the name of Africa (Exhibits P20, P35, and P49). In connection with estoppel, Beverage makes two contentions. Beverage first claims that we charged the jury erroneously with respect to the plaintiff's burden of proof. Our charge stated that the plaintiff must prove estoppel by a preponderance of the evidence, and our interrogatory to the jury reflected this charge. Beverage claims that the correct standard is that of clear, precise and unequivocal evidence. Although we do not agree with Beverage's position,[4] we need not address this issue because we agree with Beverage's second contention that there was insufficient evidence to support the jury's finding that Beverage was estopped to deny that Africa was its agent.

With respect to estoppel, the Court charged the jury in part as follows:

A person who is not otherwise liable as a party to a transaction purported to be done on his account is nevertheless subject to liability to persons who have changed their positions because of their belief, that the transaction was entered into by or for said person, if he intentionally or carelessly caused such belief, or if knowing of such belief and that others might change their position because of it, he did not take reasonable steps to notify them of the facts.

Now, I've used the term "change of position", and that phrase, as I used it, includes suffering a loss.

Now, estoppel may result from a misrepresentation, or within a small area, from a failure to reveal facts. There can be liability based on estoppel only if the third party reasonably and justifiably changes his position; and by virtue of that, suffers a loss.

Now, the concept of estoppel is similar to the concept of apparent authority to some extent. They are both closely related. I might point out that both of them depend on manifestations by the alleged principal.

I use the term "manifestations"; and as I said before, they depend on conduct by the alleged principal to a third person, and a reasonable belief by the third person that the alleged agent is authorized to bind the principal.

Now, in order for a third person to recover against the principal, there must be a reliance on, I will call it, the indications of authority that originated from the principal, and such reliance must have been reasonable under the circumstances.

In other words, although the general rule requires that an agency relationship be founded on actual consent and agreement between the principal and agent, where the principal has intentionally or carelessly caused a third person to believe another to be his agent, and that third person has relied on such appearance in dealing with the supposed agent, the principal will be barred, as we say, or estopped from denying that that party was his agent.

There is no indication in any cases interpreting Pennsylvania law that the burden of proof in connection with estoppel by agency is other than preponderance of the evidence.

---

4. In support of its position, Beverage relies on *Blofsen v. Cutaiar*, 460 Pa. 411, 333 A.2d 841 (1975). *Blofsen*, however, is a case involving equitable estoppel, and the plaintiff proceeded to the jury on the theory of agency by estoppel.

Now, under the theory or principle of estoppel, a corporation may become liable to a third party by failing to reveal the truth if that corporation knows that another is acting or will act and change its position as a result of a misrepresentation.

Now, the purported principal to be liable under the estoppel theory must know or have reason to know that the third party is or may come under a misapprehension as to the authority of an alleged agent, and that the third party has changed its position in reliance upon the misapprehension or misrepresentation as to the authority of the purported agent. [Restatement (Second) of Agency § 8B]. (N.T. 6.129–.131).

As pointed out in our discussion of apparent authority, no one at Beverage, including Dr. Hotelling, ever intentionally or carelessly caused Mr. Wittpenn or the plaintiff to believe that any of the cocoa powder contracts between the plaintiff and Africa were being transacted by Africa on the account of Beverage. Dr. Hotelling testified that he never stated that Africa and Beverage were the same corporation or that Beverage would be responsible for the debts of Africa. In fact, the evidence showed that no one at Beverage knew that Dr. Hotelling was an officer of Africa or that he was purchasing cocoa powder on behalf of Africa.

There was also no evidence that anyone at Beverage, including Dr. Hotelling, knew that Mr. Wittpenn or the plaintiff believed that any of the cocoa powder contracts between the plaintiff and Africa were being transacted on the account of Beverage. The evidence showed that the plaintiff maintained separate accounts for Beverage and Africa and billed them separately. Africa paid for its purchases of cocoa powder by checks drawn on a foreign bank, and Beverage paid for its purchases by checks drawn on a domestic bank. In fact, the first time that Dr. Hotelling or anyone else at Beverage was told that the plaintiff believed the contracts with Africa were transacted on the account of Beverage was June 30, 1978. This date was approximately six months after the payments under the three contracts for which the plaintiff claims payment in Counts I and II were due. Since no one at Beverage knew that the plaintiff and/or Mr. Wittpenn believed that the cocoa powder contracts between the plaintiff and Africa were being transacted on the account of Beverage and that they might change their position because of it, Beverage was not obligated to take reasonable steps to notify the plaintiff that Africa was not transacting business on behalf of Beverage.

The evidence, when viewed in a light most favorable to the plaintiff, does not permit a jury to reasonably conclude that Beverage is estopped from denying that Africa acted as its agent in connection with the purchase of the four shipments of cocoa powder covered by the three written contracts in the name of Africa (Exhibits P20, P35, and P49). We must therefore overturn the jury's affirmative answer to interrogatory number six (6).

## VII. Conclusion

The uncontroverted evidence at trial presented a scenario wherein all of the purchases of cocoa powder made in the name of Africa were made by Dr. Hotelling. He placed the orders with Mr. Wittpenn, a food broker. Mr. Wittpenn would provide all of the information for the contract of sale to the plaintiff, who was in the business of selling cocoa powder. The sales of cocoa powder to Africa began in 1976 and in not one instance was actual delivery of cocoa powder made to Africa. In every instance it was resold through Mr. Wittpenn and the profit of the resale was split between Mr. Wittpenn and Africa. This arrangement for speculating in the cocoa powder market was working to everyone's satisfaction until 1977, when the bottom fell out of the cocoa powder market, which meant that the resale had to be made at a loss instead of a profit.

As a food broker, Mr. Wittpenn solicited orders for cocoa powder and received a commission from the plaintiff for the sales

he made on behalf of the plaintiff. All sales of cocoa powder in this litigation were made by Mr. Wittpenn to Beverage or Africa. He also made sales on behalf of the plaintiff to Yoo Hoo Maryland and Yoo Hoo Florida. In each instance the plaintiff was the seller and would prepare the contract of sale between itself and the buyer. Mr. Wittpenn would then deliver the contract to Dr. Hotelling for his signature. Although Dr. Hotelling may have had a conflict of interest and breached his fiduciary duty to both Beverage and Africa by making purchases of cocoa powder on behalf of both companies, no evidence was presented that Dr. Hotelling ever made any statements or representations to the plaintiff which, reasonably interpreted, could have caused the plaintiff to believe that Africa was the agent of Beverage.

Mr. Wittpenn testified that because the defendant's name is Yoo Hoo Beverage Co., Inc. and Africa's name is Yoo Hoo Africa, Ltd., he assumed that they were "together". He admitted, however, that he knew they were separate companies, that he was a stockholder of Beverage, a public corporation, and that Africa was a closed corporation with a bank account in the Bahamas and an address in East Meadow, Long Island, New York.

The plaintiff maintained separate accounts for Beverage and Africa and its demands for payment in connection with the cocoa powder contracts were to Mr. Barischoff at Africa and not to Beverage until sometime late in June 1978 when the demands for payment were switched to Beverage.

Although this Court has not weighed or considered the credibility of any of the witnesses, it has thoroughly examined the record and concludes that there is not sufficient evidence for this jury to reasonably find for the plaintiff under the theory of apparent authority, the instrumentality doctrine, or the theory of estoppel. There was no evidence that Beverage did any act, made any statement to the plaintiff or Mr. Wittpenn, or withheld any information from the plaintiff or Mr. Wittpenn that

could have been considered "written or spoken words or any other conduct . . . which, reasonably interpreted," could have caused the plaintiff to believe that Beverage consented to have Africa enter into cocoa powder contracts on its behalf. *Restatement (Second) of Agency* § 27.

The Court therefore concludes that Beverage is entitled to a judgment n. o. v. with respect to Count II of the complaint, but that the jury's verdict in connection with Count I cannot be disturbed. The Court will also deny Beverage's motion for a new trial because there has been no showing that manifest injustice will result if a new trial is not granted. In accordance with our granting of a judgment n. o. v. in connection with Count II of the complaint, the Court will amend the judgment entered in favor of the plaintiff on both counts of the complaint to reflect solely the amount of damages stipulated by the parties to be due on Count I. An appropriate order will accordingly be entered.