In the Matter of STEVENS ENTERPRISES, Inc., Debtor.
No. 24889.

United States District Court
E. D. Pennsylvania.
Jan. 28, 1957.

Goff & Rubin, Philadelphia, Pa., for debtor.

Newman & Master, Philadelphia, Pa., for receiver.

Folz, Bard, Kamsler, Goodis & Greenfield, Philadelphia, Pa., for mortgagee.

VAN DUSEN, District Judge.

This case arises on a petition to modify an order entered on November 30, 1956, restraining the mortgagee from proceeding with a previously instituted legal action to foreclose a mortgage on all the properties of the debtor who filed its petition for reorganization under Bankr.Act, Chapter X, 11 U.S.C.A. § 501 et seq. on November 30, 1956. The mortgagee has also filed an answer to the petition for reorganization, asking that it be dismissed with costs.

On November 4, 1954, the debtor entered into an agreement to buy all the real properties now owned by the debtor for the purpose of building an apartment house on Rittenhouse Square in Philadelphia, except for premises known as 1911, 1913 and 1919 Rittenhouse Street (see Exhibit M-6). On or before approximately December 31, 1954, the debtor entered into an agreement to buy premises 1911, 1913 and 1919 Rittenhouse Street. The debtor has been trying to secure mortgage financing for an apartment building on the tract shown on Exhibit M-6,[1] since April 1955 and has had no success in securing financing of apartment house construction deemed suitable for this site by its officers. Since approximately December 1955, it has been very difficult to secure mortgage funds of the size required (about $4,-000,000.) to finance an apartment of the type feasible on this site.

In September 1955 (after several modifications in the terms of the original agreement of sale of November 4, 1954),[2] the debtor made settlement for the property covered by that agreement by executing a $425,000, 5% mortgage, with principal due on September 7, 1956, or when accelerated by default, and paying $100,000. in cash. This mortgage was a lien on all the properties shown on Exhibit M-6, but it was a second lien on premises 1911, 1913 and 1919 Rittenhouse Street, which were then subject to first mortgages aggregating $56,000, and a first lien on all the other properties comprising this tract. The first default occurred under this mortgage on July 11, 1956, for failure to pay the 1956 taxes and water rents, which were due on June 30, 1956. The second default occurred on August 7, 1956, when the interest due was not paid and the principal and interest due on September 7, 1956, were not paid.

By letter of October 12, 1956 (Exhibit M-1), the mortgagee confirmed its warning to the debtor that unless taxes and accrued interest were paid by October 30, 1956, judgment would be entered on the bond and warrant. These

1. The tract has a frontage of over 95 feet on 19th Street opposite Rittenhouse Square, extends irregularly to 20th Street, where there is a frontage of 129 feet, and has frontages of 210 feet on Rittenhouse Street and 41 feet on Locust Street. It comprises approximately 21,-600 square feet.

2. For details of these modifications and exact terms of the settlement, see paragraph 3 of the mortgagee's petition, which is admitted by the Answer.

sums were not paid and judgment was entered in the appropriate state court against the debtor on the bond and warrant attached to the mortgage in the amount of $453,852.75 on November 5, 1956 (see Exhibit M-4). Proceedings instituted on this judgment on November 8, 1956, caused the property to be listed for Sheriff's sale on Monday, December 3, 1956. On ex parte application of the debtor's counsel on Friday, November 30, 1956, after filing of the above-mentioned petition under Chapter X, an order to stay the sale was entered and a hearing on the petition was set for January 24, 1957. An able businessman, familiar with, and respected by, the financial institutions in the Philadelphia-New York area, was named trustee and he has at all times been available to assist the debtor in arranging financing for its apartment house project.

The debtor acquired title to premises 1911, 1913 and 1919 Rittenhouse Street on or before October 1, 1955, pursuant to the above-mentioned agreement of sale. The first mortgages on these premises are now in the amounts of $20,-000, $12,508, and $15,220. These mortgages on 1911, 1913 and 1919 Rittenhouse Street are all now in default, since they have matured. 1956 taxes and water rents on 1911 Rittenhouse Street are unpaid.

The fair market value of the above-described tract shown on Exhibit M-6 for its highest and best use (a high-type apartment building) is between $525,000 and $600,000. At Sheriff's sale on the pending foreclosure suit, it might only bring $525,000. This would not be sufficient to satisfy the outstanding judgment of $453,852.75 entered November 5, 1956, after paying these expenses required to give a purchaser a clear title:

| | |
|---|---|
| Principal of mortgage on 1911 Rittenhouse St. | $20,000.00 |
| Principal of mortgage on 1913 Rittenhouse St. | 12,508.00 |
| Principal of mortgage on 1919 Rittenhouse St. | 15,222.00 |
| Unpaid 1956 real estate taxes | 11,990.33 |
| Unpaid water and sewer rent | 709.28 |
| Insurance instalment due | 976.02 |
| Real estate transfer taxes | 10,500.00 |
| Cost of Sheriff's distribution policy | 2,615.00 |
| Cost of Sheriff's poundage | 2,640.00 |
| Total | $77,160.63 |

The only feasible mortgage financing for such an apartment is a Section 207 F. H. A. insured mortgage.[3] The debtor has sent to the F. H. A. three written requests for site approval for such a mortgage (Exhibits D-2 to D-4), but has not yet obtained approval of the above-described site.[4] The F. H. A. has delayed passing on all applications for Section 207 mortgages on central city (Philadelphia) apartments until they have received and studied a report forwarded to that agency in November 1956 from the University of Pennsylvania.[5] It would take approximately nine months from this date to secure a commitment from the F. H. A., approving a Section 207 mortgage on an apartment to be built on the above-described tract (see Report of Trustee and testimony of Mr. Connell of the F. H. A.). There is a distinct possibility of additional rental

3. 12 U.S.C.A. § 1713(b).

4. The debtor's present construction plans for a 275 to 300 unit apartment house were offered in evidence as Exhibit D-1. The debtor has had five conferences with the F. H. A., the latest being the first week in January 1957, but has not yet received site approval.

5. It is noted that the debtor, who has the burden of proof, did not furnish evidence of the contents of this report.

units at the following central city loca-
tions (in addition to the 99 units being
constructed at the northwest corner of
19th and Locust Streets) as soon as any
such units can be constructed on the
above-described tract: [6]

| | No. of Units |
|---|---|
| 21st & Chestnut Streets | 330 |
| Madway Project on the North Triangle (about 22nd St. and the Parkway) | 1000 |
| McCloskey Tract (bounded by 18th Street, 19th Street, Commerce Street and Pennsylvania Boulevard) | at least 100 |

Such units would be a factor affecting the demand for apartments on the tract shown on Exhibit M-6, but, as the last available large tract on Rittenhouse Square, this tract has a greater value for fine apartment purposes than these other tracts in the central city area.

 No feasible plan of financing or reorganization has been arranged and the debtor has not sustained its burden of showing that such a plan can be submitted at any time, and certainly not within nine months of this date.[7]

 In view of the fact that the monthly rental from the debtor's properties is over $3,000 less than the debtor's monthly expenses (see Exhibit M-3), the fact that a prompt sale of the debtor's properties subject to the mortgage

might not produce enough to cover the amount of the judgment, and the other facts recited above, the judgment creditor is entitled to have the stay of her foreclosure proceedings removed.[8] However, there is a distinct possibility that a feasible plan could be worked out in nine months if a Section 207 F. H. A. approved mortgage can be secured.[9] Under these circumstances, that part of the order of November 30, 1956, staying the mortgage foreclosure will be revoked on February 5, 1957, unless proof is submitted to the undersigned on or before February 4 that (a) all defaults under the first mortgages on 1911, 1913 and 1919 Rittenhouse Street have been remedied; (b) $48,680 has been paid to the judgment creditor to cover these items:

| | |
|---|---|
| Amount necessary to cover deficit in operating costs for the next nine months (M-3) | $30,000.00 [10] |
| Insurance instalment now due (M-2) | 980.00 |
| 1956 real estate taxes, water and sewer rents (M-2) | 12,700.00 |
| Portion of judgment creditor's counsel fee included in judgment of $453,852.75 which should be paid at this time | 5,000.00 |
| Total | $48,680.00 |

6. In addition to these locations, the Pennsylvania Railroad is actively trying to sell its tract (bounded by 19th Street, 20th Street, Commerce Street and the Pennsylvania Boulevard) for apartment development. Excavation has already been completed on the McCloskey tract to the east.

7. In re General Stores Co., D.C.S.D.N.Y. 1957, and cases there cited. There must be a reasonable expectation that a satisfactory plan can be submitted within a

reasonable time. Cf. In re Chemical Lime Co., D.C.M.D.Pa.1940, 33 F.Supp. 989; In re Murel Holding Corp., 2 Cir., 1935, 75 F.2d 941—in this case the plan was filed within a month of the filing of the petition for reorganization, 11 U.S. C.A. §§ 569 and 570.

8. It has been consistently recognized that where the only result of staying the sale would be to incur additional expenses

and (c) $5,000 has been paid to the trustee to cover administration expenses in view of the valuable services rendered by the trustee and his counsel in trying to develop a feasible plan.

On motion of any interested party, further hearings can be held in this matter if the circumstances justify such a course.[11]

See also 18 F.R.D. 386.

and diminish the amount to be realized by the lien creditor, foreclosure by such lien creditor should not be stayed. See Reighard v. Higgins Enterprises, Inc., 3 Cir., 1937, 90 F.2d 569, 570; In re Murel Holding Corp., 2 Cir., 1935, 75 F. 2d 941, 942; In re Prudence Company, 2 Cir., 1937, 90 F.2d 587; Lincoln Alliance Bank & Trust Co. v. Dye, 2 Cir., 1940, 115 F.2d 234; cf. Foust v. Munson S.S. Lines, 1936, 299 U.S. 77, 83, 57 S.Ct. 90, 81 L.Ed. 49; First National Bank of Wellston v. Conway Road Estates Co., 8 Cir., 1938, 94 F.2d 736, certiorari denied 1938, 304 U.S. 578, 58 S.Ct. 1047, 82 L.Ed. 1541.

9. Cf. Report of Trustee filed earlier today and testimony of Messrs. Dolman, Harrison and Stevens.

10. Although $28,000. would cover the operating deficit shown on Exhibit M-2 for a nine-month period, the additional $2,000.00 has been added to cover the carrying charges of 1911 Rittenhouse Street.

11. New facts, such as the acquisition of premises 1915 and 1917 Rittenhouse Street, might substantially alter the record before the court. Also, cf. 11 U.S. C.A. § 628.