Cora Lee TRAYLOR et al., Appellants,

v.

Raymond PICKERING et al., Appellees.

No. 20209.

United States Court of Appeals
Fifth Circuit.

Nov. 19, 1963.

Warren L. Eddington, C. Anthony Friloux, Jr., Adams, Eddington & Zimmerman and Ben L. Adams, Houston, Tex., for appellants.

John H. Benckenstein, Beaumont, Tex., for appellees.

Before HUTCHESON and BROWN, Circuit Judges, and SIMPSON, District Judge.

JOHN R. BROWN, Circuit Judge.

■ Appealing from a judgment entered upon a jury verdict for Appellees-Defendants after a full-dress trial at which testimony from live swearers was heard, Appellants-Plaintiffs complain of the District Judge's denial of their motion for new trial. More specifically Appellants urge that the testimony of Patrolman Dillard, the officer who investigated the collision made the basis of this suit, was substantially different on the trial from his testimony on oral deposition, in investigative statements, and in the criminal complaint signed by him following his investigation. The asserted difference was that prior to the trial the Patrolman had, and expressed, an opinion as to 2 critical facts—the speed of the vehicle driven by the Defendant Marks and the point of impact—while on the trial he refused to give his opinion. Our analysis persuades us that the Patrolman's testimony at the trial was substantially the same as his prior statements. And if there was variance, it was not such that we are compelled to hold that the witness was consciously testifying differently. And in any event, there being no perjury, overturning the trial Judge's denial of motion for new trial could be done only for abuse of discretion, which is here not present. We therefore affirm.

Appellants do not contend that the Patrolman expressed an opinion at trial different from that expressed previously; they urge that he refused to express at trial an opinion which he previously held. We therefore examine the criminal complaint and the deposition for the sole purpose of determining whether the witness indicated in either an opinion on the critical facts of speed and point of impact.

Other than general allegations of negligence, the only opinion or conclusion indicated in the complaint as to these facts was that "Mark[s], hereinafter styled defendant, * * * was then and there engaged in the performance of an unlawful act, to-wit, traveling at a rate of speed in excess of the legal speed limit, and by traveling on the wrong side of the road than which was proper for his motor vehicle, * * *." As indicated by his testimony at the hearing on motion for new trial, the criminal complaint was filed hurriedly to obtain personal jurisdiction over the Defendant Marks, a Louisiana resident, pending a full investigation. The Patrolman put it this way:

"[T]his was what we was alleging had happened, and we would have to prove it in Court, and I hadn't testified on it."

The inability or reluctance of the witness to testify as to his opinion is more strikingly revealed on examination of his oral pretrial discovery deposition. On page 12 of the deposition the following exchange took place:

"Q. Were you able to locate the point of the impact?

"A. No, sir, the only markings on the highway was a scratch in the pavement about three foot in the south lane."

Then on pages 17–18 of the deposition, the Patrolman was questioned about speed:

"Q. Was there anything on the highway there as to give you any indication as to the speed of the vehicles?

"A. No, sir.

\* \* \*

"Q. Does that [the damage to the vehicles] indicate or does it not indicate to you that that pickup was going at a pretty good speed?

"A. Well, it would indicate probably both of them was traveling—both of them traveling about 35 or 40 miles an hour.

"Q. That's what I mean, if you could give us any idea of the speed by looking at the damage to the vehicles.

"A. Well, it would be hard to do on account of the heavy bumper on the truck. It would inflict so much more damage than the light pickup truck, and also he scratched down the side of the bed of the pickup truck, and it was made out of heavy timbers.

"Q. Would the distance that the vehicles traveled indicate anything as to speed?

"A. Not without skid marks. Had the truck been sliding his wheels it could have indicated it, but it looked more or less like a free roll and no indication that he applied his brakes anywhere."

Appellants contend that the following excerpt from the cross-examination of the Patrolman on his oral deposition indicates that he did have an opinion as to point of impact:

"Q. Okay. Now one other thing, you mentioned that the basis for your opinion as to the point of impact was this scratch in the highway which you said was caused by the running gear being knocked down?

"A. Yes, sir." (p. 27)

But it is clear from the direct examination that the witness was entitled to consider that the only opinion expressed by him in connection with the scratch was as to the position of the vehicles immediately before the collision:

"Q. Was anything on the highway that you could see which gave you any opinion as to where the trucks were immediately before the collision?

"A. Well, the only thing that I based my opinion on was this scratch in the south lane on the highway."

On direct examination at the trial, the Patrolman was not asked for his opinion as to impact; he was merely asked where he found evidence of "the site of the collision," to which he freely responded with a description of the nature and location of the debris. The Patrolman was asked whether he could make any estimate of the approximate speed of the vehicle driven by the Defendant Marks, to which he responded:

"A. No. That would be impossible."

Appellants made no attempt at this point to secure leave from the District Judge to interrogate the Patrolman as a hostile witness, see F.R.Civ.P. 43(b); 2B Barron & Holtzoff, Federal Practice and Procedure § 966, at 237 (Wright ed. 1961); 5 Moore, Federal Practice par. 43.10, at 1348 (1951), but merely offered him up for cross-examination.

The Patrolman was asked for the first time on cross-examination whether he had been able to locate the point of impact, to which he replied, "No, sir, I couldn't never locate it." After getting the Patrolman to admit on redirect examination that the only evidence of impact was the scratch mark, Appellants consented to the Patrolman's being excused. At this time Appellants expressed no dissatisfaction with the Patrolman's testimony. Indeed, it was not until the motion for new trial following the adverse jury verdict that Appellants registered any dissatisfaction.

A new trial may be granted on the ground that a witness willfully testified falsely to a material fact, especially where the perjured testimony was induced by the opposite party or the false testimony was that of the opposite party, e. g., Hunter v. Thomas, 10 Cir., 1949, 173 F.2d 810, 812, but the District Judge did not conclude that the Patrolman's testimony was perjured. We cannot reject this as clearly erroneous. The nature of the testimony at trial was such that the Patrolman could reasonably have believed that he was testifying at trial substantially as he had testified previously. At most the testimony was merely different. Perhaps this occasioned actual surprise and disappointment. But Appellants' objection comes too late. Assuming a basis for surprise, the remedy would have been to ask for opportunity to interrogate the Patrolman as a hostile witness or for a continuance to prepare for rebuttal testimony. Having failed to do this, and having permitted the cause to go to the jury, they may not now open up the issue as a matter of trial error. Cf. Moylan v. Siciliano, 9 Cir., 1961, 292 F.2d 704 (surprise at testimony of other party's witness). In this posture, relief could come only through a motion for new trial.

A motion for new trial invokes the sound discretion of the District Judge, and his action is not to be reversed save for clear abuse of discretion. 2B Barron & Holtzoff, op. cit. supra § 1302, at 340. Of course, a Federal Judge has broad authority to exercise that discretion to see that justice is done in the particular case. That the District Judge understood the standard to be applied is clearly revealed by his remarks at the close of the motion for new trial:

> "The Court is very reluctant to set aside a jury verdict, and I think that the jury reached the only verdict they could reach in this case, having heard the testimony that they heard. If the case had been tried to the Court without a jury, I feel like the Court would probably

have reached the same verdict, * * *."

The District Judge's denial of the motion for new trial was a proper exercise of his discretion. There it ends.

Affirmed.