**Daniel W. MARKS, Guardian of the Estate of David A. Marks**

v.

**MOBIL OIL CORPORATION and Barbara Lou McCreight.**

Civ. A. No. 79-2675.

United States District Court, E.D. Pennsylvania.

April 25, 1983.

John J. Barrett, Jr., Philadelphia, Pa., for plaintiff.

Joseph F. Moore, Jr., Philadelphia, Pa., for Mobil.

William C. McGovern, Philadelphia, Pa., for McCreight.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

This is a diversity action in which plaintiff, Daniel Marks, as guardian of the estate of his son, David Marks, an incompetent, alleged that his son was severely injured in an automobile accident as a result of the negligence of Mobil Oil Corporation ("Mobil"), which filed a third-party complaint against Barbara Lou McCreight ("McCreight"), the driver of the car in which David Marks was a passenger. A bifurcated trial was held before a jury during September, 1982. The jury found Mobil and McCreight to have been negligent, specifically finding that Mobil was 60% causally negligent and that McCreight was 40% causally negligent in bringing about the accident and injuries to David Marks. After hearing evidence on damages, the jury awarded David Marks $5,147,000 in damages. This amount was increased to $6,583,020.27 by application of Pennsylvania Rule of Civil Procedure 238 which provides for the award of pre-judgment interest. Mobil and McCreight have each moved for both judgment notwithstanding the verdict, or in the alternative for a new trial. For the reasons hereinafter set forth, the Court will enter an Order denying these motions.

*Facts*

Plaintiff alleged that David Marks was, on November 26, 1978, injured in an automobile accident as a result of the negligence of Joseph W. Galantino ("Galantino"), a Mobil truck driver acting within the course and scope of his employment as an agent of Mobil. Galantino was driving a 45-foot, 15-ton Mobil tanker truck, in particular, a 1978 Kenworth truck tractor with a tank trailer attached. At the time of the accident, Marks was a passenger in a 1969 Volkswagen Beetle driven by McCreight. The accident occurred on U.S. Route 202 in Tredyffrin Township, Chester County, Pennsylvania, as McCreight and Marks were returning to college in North Carolina from their respective parents' homes in Wayne, Pennsylvania. Mobil filed a third-party action against McCreight, averring that if Mobil was found to be liable, McCreight's negligence had also contributed to the injuries to Marks.

Trial was held before a jury in September, 1982. The liability portion of the case was tried first. In answers to interrogatories, the jury found, based on a preponderance of the evidence, that Mobil and McCreight were both negligent and that their negligence had been a proximate cause of the accident. Specifically, the jury found Mobil, through its driver Galantino, to have been 60 percent causally negligent and found that McCreight was 40 percent causally negligent. The trial then continued on the issue of damages, whereupon the jury, after receiving instructions as to the proper measure of damages for lost earning

capacity and pain and suffering, returned with its verdict of $5,147,000 in damages for David Marks.

As to liability, plaintiff contended that Galantino's negligence had brought about the accident because, while driving the large Mobil tanker rig at 65 miles per hour, he passed the McCreight Volkswagen creating an air current or bow wave which caused the Volkswagen to leave the highway, turn over, and injure David Marks. David Marks was thrown from the vehicle, which was not equipped with seat belts. Upon impact, Marks was severely injured, suffering brain and spinal damage which have rendered him incompetent, spastic, and paraplegic. The speed limit on the relevant portion of Route 202 at the time of the accident was 55 miles per hour. Plaintiff contended that the Mobil tanker rig had caused the accident by (1) passing the McCreight VW at excessive speed (65 m.p. h.), thereby creating the aerodynamic force which affected the McCreight vehicle; and (2) failing to sound the truck's horn so as to warn McCreight of the imminent pass of the truck.

Mobil's defense to the action was threefold: first, that the aerodynamic effect posited by plaintiff was a physical impossibility; second, that McCreight was aware of the passing truck and that the failure of Galantino to sound his horn could not have caused the accident; and finally that Galantino had been negligent only in driving at excessive speed and that the accident, if it was proximately caused by anyone's negligence, must have resulted from inattentiveness or driver error on the part of McCreight. McCreight's defense to Mobil's third-party complaint was that she had not been negligent in operating her VW but that the VW had been altered in its course and ultimately driven off the road by a collision with the Mobil vehicle.

In support of their various explanations of what happened, Marks and Mobil both presented eyewitness testimony and expert testimony. Plaintiff's expert was Dr. James Wambold ("Wambold") professor of Mechanical Engineering at Pennsylvania State University. Mobil presented expert witnesses in an attempt to refute Dr. Wambold's expert testimony. The principal eyewitnesses were McCreight, Galantino, and Bruce Keeler ("Keeler"). Keeler had been driving on Route 202 at the time of the accident and had witnessed the accident in his rear view mirror.

In support of its motions for judgment n.o.v. or for a new trial, Mobil's principal contentions are that: (1) Dr. Wambold's testimony was flawed in several respects and should not have been admitted; (2) with or without Dr. Wambold's testimony, the jury's finding of negligence on the part of Mobil is not supported by the evidence; (3) David Marks should have been excluded from the courtroom because his obviously severe injuries may have biased the jury in his favor; (4) the Court should have granted a mistrial when the severely injured David Marks uttered some words from the rear of the courtroom at a point during the testimony of McCreight; (5) the Employees' Rulebook of Mobil should not have been admitted into evidence; (6) the Court should not have instructed the jury that Galantino's driving the tanker rig at 65 m.p.h. (10 miles above the posted speed limit) was negligence per se; (7) the verdict was excessive and (8) the Court should not have added prejudgment interest to the damage award pursuant to Pennsylvania Rule of Civil Procedure 238. Despite the large number of proposed grounds for setting aside the jury's verdict, Mobil has not, for the reasons discussed more fully below, persuaded this Court to grant its motions.

Third-party defendant McCreight has also filed motions for judgment n.o.v. or in the alternative for a new trial. As grounds for her motions, McCreight contends that (1) the evidence does not support the jury's finding that she was 40 percent causally negligent in bringing about the accident; (2) witness Keeler's reference in his testimony to being contacted by an insurance adjuster warrants upsetting the jury verdict; (3) the verdict amount was excessive; (4) the Court should have given McCreight's requested instruction concerning the duties

of a motorist being passed on the highway and (5) the Court should not have applied Pennsylvania Rule of Civil Procedure 238 to the verdict. Like Mobil, McCreight has provided this Court with no persuasive reason for setting aside the jury's verdict, which was arrived at after a fair trial.

*The Standard for Ruling Upon Defendant's Motions*

■■■ A grant of judgment notwithstanding the verdict is appropriate only when, viewing the evidence presented and drawing all inferences in favor of the verdict winner, a reasonable person could reach no conclusion other than the fact finder had made a mistake and that the moving party was entitled to judgment. *See Thomas v. E.J. Korvette, Inc.,* 476 F.2d 471, 474 (3d Cir.1973); *Meyer v. W.R. Grace & Co.,* 421 F.Supp. 1331, 1334 (E.D.Pa.1976). A moving party is entitled to judgment n.o.v. only when the evidence in support of the verdict winner is insufficient to even create an issue of fact to be submitted to the jury. *See Neville Chemical Co. v. Union Carbide Corp.,* 422 F.2d 1205, 1210 (3d Cir.1970). *Woodward & Dickerson, Inc. v. Yoo Hoo Beverage Co.,* 502 F.Supp. 395 (E.D.Pa. 1980). A motion for judgment n.o.v. "may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment." 5A *Moore's Federal Practice,* ¶ 50.07(2), at 50–77 (footnote omitted). Overturning a jury verdict is particularly inappropriate where the determination of the proper verdict requires an evaluation of the credibility of witnesses. *See Posttape Associates v. Eastman Kodak Company,* 68 F.R.D. 323 (E.D.Pa.1975), *rev'd on other grounds,* 537 F.2d 751 (3d Cir.1976). In ruling on a motion for judgment n.o.v., the Court should not consider the credibility of witnesses. *See Thomas v. E.J. Korvette, supra,* 476 F.2d at 474.

■■■ There are three grounds for granting a new trial: (1) manifest error of law; (2) manifest error of fact; and (3) newly discovered evidence. *See* 6A *Moore's Federal Practice* ¶ 59.07. Neither Mobil nor McCreight have contended that there exists newly discovered evidence pertinent to the trial of this matter. Motions for a new trial require the exercise of discretion by the Court, whose duty is to see that the trial verdict does not result in a miscarriage of justice. *See Woodward & Dickerson, supra,* 6A *Moore's Federal Practice* ¶ 59.-08(4), at 59–160; *Thomas v. E.J. Korvette, supra,* 476 F.2d at 474–75. "The jury's verdict may be set aside only if manifest injustice will result if it were allowed to stand. The Court may not substitute its own judgment for that of the jury merely because the Court may have reached a different conclusion." *Woodward & Dickerson, Inc. v. Yoo Hoo Beverage Co., supra,* 502 F.Supp. at 397. *See also McNulty v. Borden, Inc.,* 542 F.Supp. 655, 657 (E.D.Pa. 1982).

*An Examination of the Proffered Grounds for J.N.O.V. or New Trial*

A. *The Admissability of Dr. Wambold's Testimony.*

Dr. Wambold testified for slightly more than one-half of a trial day. On direct examination, he opined that a large vehicle, such as the Mobil tanker driven by Galantino, travelling at high velocity creates an air current emanating out from the forward portion of the truck; Dr. Wambold termed this the "bow wave". Dr. Wambold testified that, as the Mobil tanker began to draw alongside the McCreight VW, it would have exerted an outward pressure on the VW, pushing it to the side of the highway. He further testified that, as the Mobil tanker got ahead of the McCreight VW, the VW would have been within the "curl" of the bow wave and would then have ceased to be pushed to the right by the aerodynamic pressure of the bow wave. Dr. Wambold theorized that a normal person in McCreight's position when first she felt the bow wave acting upon her VW, would have, consciously or subconsciously, turned the steering wheel slightly to the left to counteract the outward pressure created by the bow wave. He further testified that as the Mobil tanker drew ahead of the VW, there would have been a sudden cessation of the

outward thrust of the bow wave upon the VW because the VW would then have been in a relative vacuum underneath the curl of the bow wave. At this point, testified Dr. Wambold, a driver who had made a steering correction in order to avoid being blown off the highway by the bow wave, would have suddenly veered to the left because of the sudden cessation of outward pressure to the right, thus causing a contact between the VW and the Mobil tanker.

■ The jury was presented with ample evidence concerning plaintiff's theories of liability in this matter. The jury could have reasonably accepted Dr. Wambold's expert testimony that the excessive speed of the truck and its aerodynamic effect on the Volkswagen was a proximate cause of the accident and/or it could have determined that the excessive speed of the truck and the failure to warn of its passing was a proximate cause of the accident. The parties agree that, as the Mobil tanker passed the McCreight VW, the two vehicles briefly collided before the VW careened to the right, rolling over and throwing David Marks from the VW. McCreight testified that she did not recall turning the wheel to the left. However, she did testify that she was aware of a strong force pushing the VW to the right as the Mobil tanker came alongside her in the left lane of Route 202, while she was driving in the right lane. McCreight testified that she attempted to hold the steering wheel tight and straight, but the jury may have determined that she was not successful in maintaining control of the vehicle. After the two vehicles collided, for whatever reason, the impact of the much larger Mobil tanker may have caused the VW to leave the road. McCreight testified on cross-examination that the impact between the VW and the tanker was "like a pool ball striking the side of the table and ricochetting off." (N.T. at 206). The jury's finding that both Mobil and McCreight were causally negligent in bringing about the accident is amply supported by the evidence presented at trial.

Mobil challenges the admissibility of Dr. Wambold's testimony by contending that Wambold was not qualified to testify as to possible driver reactions to the bow wave created by the Mobil tanker. However, when Dr. Wambold testified regarding the bow wave and possible driver reactions to it, counsel for the defendants did not object to his testimony nor did counsel object to Dr. Wambold's opinion as to causation, which was that McCreight would have acted like an ordinary driver and steered against the bow wave's outward force but then permitted the VW to veer left when that outward force lessened or ceased (See N.T. 295–96). Dr. Wambold did not represent himself to be an expert on driver behavior nor did he attempt to offer a statistical prediction as to driver behavior in response to the bow wave. Instead, he merely discussed driver responses as a way of illustrating his basic thesis, which was that the bow wave or outward pressure created by the large, speeding Mobil tanker was sufficient to affect the path of the VW being passed by the Mobil tanker.

In an attempt to refute the expert testimony of Dr. Wambold, Mobil presented the expert testimony of Dr. Frank Buckley, professor at the University of Maryland and a mechanical engineer who has worked extensively in aerodynamics, as well as the expert testimony of Edward Heitzman, a mechanical engineer who has worked in the field of highway safety. They testified that the bow wave created by the Mobil tanker could not have been as strong as posited by Dr. Wambold and that the accident could not have occurred but for serious driver error by McCreight. In particular, they noted that, because there were paint marks from the VW on the right front tire of the Mobil truck, this suggested that McCreight had collided with the truck for a reason other than the aerodynamic effects of the truck.

It was for the jury to evaluate the conflicting expert and eyewitness testimony. The jury was presented with ample evidence from which it could have concluded that the aerodynamic effect of the speeding Mobil vehicle coupled with McCreight's response was a proximate cause of the acci-

dent and/or that the failure of the Mobil tanker to warn of its passing combined with the failure of the startled McCreight to control her vehicle under these circumstances was a proximate cause of the accident. The jury's acceptance of either one or both of these theories of liability presented by the plaintiff is consistent with the jury's finding that Mobil was 60% causally negligent and that McCreight was 40% causally negligent.

As heretofore noted, the jury was presented with a host of evidence from which it could determine whether there was in fact any validity to Dr. Wambold's testimony regarding the aerodynamic effect of the speeding Mobil truck. Counsel for Mobil cross-examined Dr. Wambold at length. (*See* N.T. 253–73; 297–352; 361–65). Mobil also presented three days of testimony from two expert witnesses of its own (*See* N.T. 649–937). Mobil also showed the jury a videotape of a re-enactment of a tanker passing a VW in order to illustrate its theory, which was that the speeding tanker created a negligible aerodynamic force upon the VW. Mobil's closing argument devoted extensive discussion directed toward attempting to refute Dr. Wambold's testimony (*see* N.T. 1012–13; 1024–32; 1041–45).

Quite frankly, all of Mobil's attacks on Dr. Wambold's testimony go to the weight to be accorded his opinions, not to their admissibility as evidence in this trial. The jury had ample and fair opportunity to scrutinize the testimony of Dr. Wambold, defendant's experts, and the eyewitness testimony of McCreight and Keeler against the backdrop of their common sense and experience. The jury found, based on some or all of this evidence, that Mobil had been 60 percent causally negligent in bringing about the accident. This finding is not unreasonable and does not constitute a miscarriage of justice. The Court will therefore refuse to disturb the jury's verdict.

█ Mobil has further alleged that the portion of the pretrial order in this case which was completed by plaintiff's counsel did not fully disclose the substance of Dr. Wambold's trial testimony and that a variance between what defendants had been led to expect in the pretrial order and the actual testimony made it impossible for Mobil to effectively counter the Wambold testimony at trial. As the preceding discussion has indicated, Mobil's counsel was quite well prepared for Dr. Wambold's testimony and launched a vigorous attack on it at trial. Mobil has at most pointed out minute variances between plaintiff's pretrial paraphrasing of the Wambold testimony and the actual Wambold testimony. Such quibbling on Mobil's part does not support a grant of judgment n.o.v. or a new trial. *See Hammonton Investment Co. v. Morco, Ltd.,* 452 F.2d 119, 122 (7th Cir.1971). If Mobil had truly been "surprised" by Dr. Wambold's testimony, it should have objected at the appropriate juncture (which it did not) and asked for a brief continuance for the purpose of preparing rebuttal testimony or cross-examining Dr. Wambold (*see Traylor v. Pickering,* 324 F.2d 655, 658 (5th Cir. 1963) ). Mobil did not seek such a continuance.

█ Mobil has also suggested that Dr. Wambold did not possess sufficient expertise in the area of automobile vehicle aerodynamics to offer an expert opinion as to the effect of a large speeding tanker upon nearby vehicles, and that the Court should therefore have prohibited him from taking the stand and testifying. The admission of expert testimony rests within the sound discretion of the trial court. *See Seese v. Volkswagenwerk A.G.,* 648 F.2d 833, 844 (3d Cir.1981); *Fuentes v. Reilly,* 590 F.2d 509, 511 (3d Cir.1979). In admitting Dr. Wambold's testimony, this Court was clearly exercising its discretion in an appropriate manner. Dr. Wambold's resume clearly indicates that he possesses substantial expertise in the area of vehicle dynamics. He has a doctorate in Mechanical Engineering and has had extensive industrial experience in studying shock and vibration concerning vehicles. He has taught related courses at Penn State and published articles in this field. Dr. Wambold testified that vehicle dynamics is the study of the manner in which a vehicle moves due to the forces

that are generated upon it from wind forces, air forces, ground forces, or from the forces of the person steering the vehicle (*see* N.T. at 277).

Federal Rule of Evidence 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of facts to understand the evidence or to determine a fact in issue, the witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of opinion or otherwise.

In this case, in which the jury was asked to determine the cause of the tragic accident that had occurred rapidly and with only a few eyewitnesses to it, expert testimony concerning the aerodynamic effect of vehicles and upon vehicles was clearly helpful to the trier of fact. Both plaintiff and Mobil presented such evidence. The jury was free to weigh the competing expert and eyewitness testimony in determining liability. It did so in a reasonable manner that will not be disturbed by this Court.

It should be further noted that the Court instructed the jury as to the proper approach to evaluating the expert testimony of both sides. The Court instructed the jury that

> [T]he law says that if you should decide the opinion of an expert witness is not based on sufficient education, sufficient experience, sufficient scientific knowledge, or if you should conclude that the reasons given in support of his opinion were not [s]ound, or were not supported by the evidence in the case, or is outweighed by other evidence in the case, the law says you may disregard the opinion of that expert witness entirely.

> \* \* \* \* \* \*

> The validity of the opinion that is expressed by the witness rests upon the truth of those facts that the witness was asked to assume. And if there should be any infirmity of the hypothesis or the assumed facts, then the infirmity attaches to the witness' answer that was predicated upon those assumed facts.

(N.T. 1072). Mobil has presented this Court with no reason related to Dr. Wambold's testimony for disturbing the jury's verdict.

**B. *The Weight and Sufficiency of the Evidence in General***

Mobil and McCreight also claim that the verdict was not supported by the evidence. This Court, however, finds that the verdict was supported by the evidence presented at trial. As heretofore noted, all sides presented expert and eyewitness testimony concerning the accident. Based on a fair reading of this evidence, a reasonable jury could easily have reached the conclusion that Mobil (through its driver Galantino) owed Marks and McCreight a duty of adequate care in passing the VW, that Mobil breached this duty through Galantino's speeding and failure to warn, and that the accident was caused by either the bow wave or the impact between the vehicles in either the passing lane or the right hand lane. The jury could easily have further concluded that McCreight's reaction to the bow wave, the impact, or the surprise of the tanker was driver negligence 40 percent responsible for causing the accident, while Mobil's negligence was 60 percent responsible for causing the accident.

 Pennsylvania substantive law is applicable to this diversity action. "In Pennsylvania the operator of a vehicle has a duty to be aware of the characteristics of his vehicle and to exercise due care in avoiding dangers caused by those characteristics." *Lebesco v. Southeastern Pennsylvania Transportation Authority,* 251 Pa.Super. 415, 422, 380 A.2d 848, 851 (1977). The articulation of this responsibility merely makes specific to automobiles the general duty imposed on all of us to exercise the care of a reasonable person to protect others from unreasonable risks arising out of our conduct. *See Suchmojajcz v. Hummel Chemical Co.,* 524 F.2d 19, 24 (3d Cir.1975); *McCoy v. Marriott Corp.,* 91 F.R.D. 610, 612 (E.D.Pa.1981). *Restatement (2nd) of Torts* § 302, comment. a; W. Prosser, *Torts,* § 53 (4th ed. 1971). The failure to exercise reasonable care is by definition negligence. In

this case, it was the function of the jury to determine whether the Mobil driver's conduct conformed to the standards of a reasonable person. *See Restatement (2nd) of Torts* § 328C(b). *McCoy, supra,* 91 F.R.D. at 612. The jury determined that, under the facts of this case, Galantino and Mobil had been negligent. This conclusion was amply supported by the evidence.

 Furthermore, Mobil admitted in its pleadings and at trial that the tanker was traveling at 65 m.p.h. in a 55 m.p.h. zone. In Pennsylvania, speeding violates the state motor vehicle code and is negligence per se. *See* 75 Pa.C.S.A. § 3362. Mobil contends, however, that despite Galantino's admitted speeding, the Court should not have instructed the jury that such a statutory violation was negligence per se. For reasons more fully discussed hereinafter (*see* pp. 770–772, *infra*), the Court rejects this contention.

### C. The Presence of David Marks at Trial

 Mobil also contends that David Marks should have been excluded from the courtroom during the liability portion of the trial. Mobil argues that the sight of the severely injured Marks posed an unrealistically high risk of invoking juror bias in his favor and prejudice against Mobil. This contention is without merit. A party to a lawsuit has a right to attend the trial absent an overwhelming reason to the contrary. In a civil case, this Court can at this time envision no reason to exclude a party because of his injuries, particularly where, as in this case, the party's behavior at trial was not disruptive.

The Court always retains discretion concerning the administration of courtroom proceedings. In this case, the Court exercised its discretion to permit David Marks to sit in the Courtroom for a few hours during the seven-day liability phase of the trial and throughout the damages phase. Furthermore, this Court finds that the presence of David Marks was not prejudicial to Mobil since, as the testimony of plaintiff's damages witnesses concerning the extent of David Marks' injuries painted a grimmer picture of the injuries than the actual sight of Marks.

Mobil specifically cites one incident in which David Marks spoke up during the damages phase of the trial in response to the testimony of McCreight, who was then describing her efforts to administer first aid to him immediately after the accident. David Marks simply stated aloud from the rear of the courtroom, "Thank you, Barbara" in response to the testimony. Mobil's counsel has described this as a heart-rending incident, which indeed it was. However, this spontaneous remark by the brain-damaged Marks is not grounds for a new trial.

### D. The Isolated Reference to Insurance during Keeler's Testimony

 As heretofore noted, one witness at trial was Bruce Keeler, who had been driving a car on Route 202 ahead of the McCreight VW and who had witnessed the accident in his rearview mirror. During his testimony, Keeler was asked on cross-examination by Mobil's counsel whether he had been contacted by "a representative of one of the other parties?" This exchange ensued:

Keeler: Do you mean, did McCreight's insurance company contact me? Is that what you are referring to?

Q. A company called Crawford ...

Keeler: I was contacted by them.

 * * * * * *

Q. Mr. Keeler, do you remember what your statement in February, of 1979 said about your speed at the time or before the accident?

Keeler: No, I didn't handwrite that statement. That was written by the insurance agent. He asked me the questions ..."

(N.T. 115, 117–18). McCreight contends that these brief mentions of the word "insurance" during the cross-examination of Keeler made it impossible for her to receive a fair trial from the jury and that this Court should have, on the basis of Keeler's statement, declared a mistrial.

Federal Rule of Civil Procedure 61 provides:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. *The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.*

(emphasis added). Mr. Keeler's mention of insurance was a defect in the trial, since the Federal Rule of Evidence 411 specifically provides that evidence of the insurance coverage of a party should not be allowed to come before the jury unless offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness. *See* Fed.R.Evid. 411; *Corbett v. Borandi,* 375 F.2d 265, 270 (3d Cir.1967). However, litigants are entitled to a fair trial, not a perfect one (*see Smith v. Phillips,* 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982)), and Keeler's mention of insurance constitutes at most a slight defect in the three-week trial of this action. It would be an abuse of this Court's discretion and an action contrary to the express language of Fed.R.Civ.P. 61 for this Court to grant a new trial or to have declared a mistrial solely on the basis of Mr. Keeler's inadvertent statement brought out by defense counsel. The plaintiff, the verdict winner, did not elicit the mention of insurance.

As the Third Circuit observed in *Corbett v. Borandi, supra:*

> It can thus readily be seen that the mere mention of the word 'insurance' in the trial of a case is not fatal but the context in which it is laid is of controlling importance.

375 F.2d at 271. *See also Posttape Associates v. Eastman Kodak Co.,* 537 F.2d 751

(3d Cir.1976); *Varlack v. SWC Caribbean,* 550 F.2d 171 (1977). In the context of the instant case, Mr. Keeler's testimony did not affect the substantive rights of the parties.

E. *The Admission of the Mobil Drivers' Handbook and Jury Instructions Concerning the Handbook*

■ Mobil also contends that this Court should not have admitted into evidence the Mobil Driver's *Handbook* which contains instructions for the operation of the company's vehicles by its drivers. Because the *Handbook* was relevant to the issues of the case and not prejudicial to Mobil, its introduction does not entitle defendants to judgment n.o.v. or a new trial. Furthermore, when the handbook was actually offered into evidence, Mobil's counsel did not object (*See* N.T. 246–47), although Mobil did state an objection to the *Handbook's* admission in the pretrial Order. The Court could refuse to consider this argument because defendant's failure to make a timely objection waives this argument as a ground for post-trial motions. *See Weaver v. Ford Motor Company,* 382 F.Supp. 1068, 1075 (E.D.Pa. 1974), *aff'd mem.,* 515 F.2d 507 (3d Cir. 1975). However, the Court will, in the interests of justice, address the merits of Mobil's contention.

Every driver of a Mobil vehicle is provided with a copy of the Handbook and each driver signs a receipt to indicate that he has received the Handbook and agrees to read and follow its instructions. The Handbook contains rules for safe driving, including rules and procedures for passing other vehicles when driving a Mobil vehicle. The Handbook safety rules represent standards established by Mobil for the desired operation of corporate vehicles. The rules embody the company's definition of proper driving practices. The card each driver signs acknowledges his or her awareness of these standards and intention to comply with the rules when driving a company vehicle. The Handbook is thus clearly relevant to the issues in this litigation, particularly the questions of whether Galantino exercised due care and whether the harm caused by Mobil's negligence was foreseeable.

■ Failure to comply with a company rule does not constitute negligence per se, as would the violation of a state's safety statute (*see* pp. 770–772, *infra*), and this Court so instructed the jury. However, a company's safe driving rules are relevant in a negligence action when, as the jury was told, the plaintiff contends that the accident was caused by a violation of the rules. The jury is entitled to consider such rules in making its determination as to whether the defendant was negligent. *See Johns v. Baltimore & Ohio Railroad Co.,* 143 F.Supp. 15 (W.D.Pa.1956), *aff'd,* 239 F.2d 385 (3d Cir. 1957).

As heretofore pointed out, the plaintiff claimed the accident was caused by the Mobil truck having violated at least two rules in the Handbook: (1) driving at excessive speed; and (2) not warning McCreight of its intention to pass. The Handbook requires drivers to obey the posted speed limits and also instructs drivers to use the vehicle's horn or lights for the purpose of alerting vehicles that are being passed. Specifically, the Handbook (p. 11) cautions Mobil drivers to, when changing direction, "Use turn signals and sound horn first, not after you are abreast, as this could cause other drivers to lose control." The Court, recognizing this, instructed the jury as follows:

> Now I want to point out to you that additionally the plaintiff in this case claims that the Mobil driver was not only violating the speed statute, but that the Mobil driver was also negligent in not signaling his intention to pass in accordance with a policy set forth in the Mobil driver's handbook.
>
> Now I know you heard testimony as to that and I won't comment on the testimony. I'll simply say that if you find that the policy of signaling, as set forth in that handbook, was intended to cover the situation presented by the facts in this case, and that the policy was designed to prevent the type of harm that occurred in this case, you may consider any failure to warn, if you find there was a failure to warn, in determining the driver's negligence *provided, that the policy does not*

*set forth a standard of conduct that exceeds what the law requires of a reasonable person under the circumstances.* You determine that.

N.T. 1084–85. (emphasis added).

F. *The Negligence Per Se Charge Regarding Mobil's Violation of the Posted Speed Limit*

■ As heretofore noted, the posted speed limit on Route 202 at the time of the accident was 55 m.p.h., the maximum speed limit allowed anywhere in Pennsylvania. *See* 75 Pa.C.S.A. § 3362(a)(2), 3363; 23 U.S.C. § 154. The Mobil tanker was admittedly traveling at 65 m.p.h. when it approached and passed the McCreight VW. Without doubt, the Mobil tanker was violating the speed limit statutorily set in the state. Furthermore, under state law, a violation of the Motor Vehicle Code (Title 75 of the Pennsylvania statutes) is negligence per se. *See Landis v. Conestoga Transportation Co.,* 349 Pa. 97, 100, 36 A.2d 465, 466 (1944). Under the principle of negligence per se, when a defendant's vehicle at the time of the accident is traveling at speed in excess of the statutory limit, the defendant is liable to the plaintiff only if the excessive speed is found to have been a proximate cause of the harm. *Id.* 36 A.2d at 466.

One of the interrogatories to the jury read as follows:

> Do you find from a preponderance of the evidence that Mobil Oil Corporation was negligent and that its negligence was a proximate cause of the accident?

The jury was also instructed that:

> the unexcused violation of a legislative enactment, which defines the standard of conduct of a reasonable person, is negligence in itself. That's what we meant when some of the attorneys said to you negligence per se.
>
> [Y]ou've got to remember there are two prongs to liability in this type of case. The one prong, negligence per se. However, keep in mind that the violation of the legislative enactment must have been the proximate cause of the accident before such negligence can be held to make that party liable for the accident.

For instance, in this case, in order to find Mobil liable on the basis of the statutory violation, you must find from a preponderance of the evidence that the 65 mile per hour speed was a proximate cause of the accident. If you should determine that the accident would have occurred, even had the tanker been traveling at a speed within the lawful limit, you may not find that the statute—violation of the statute—was a proximate cause of the accident.

(N.T. at 1083–84; *see also* N.T. at 1080). The jury, properly instructed as to negligence per se, found that Mobil's negligence (which could reasonably have been found based upon a number of factors involved in the collision, including speeding, aerodynamic effects, or failure to warn) was a proximate cause of the accident.

▮▮▮ Mobil, however, contends that the negligence per se instruction should not have been given in this case even though Mobil admitted violating the relevant statute. Specifically, Mobil contends that the 55 m.p.h. speed limit in Pennsylvania and on Route 202 was not set to regulate highway safety but to regulate fuel consumption. Before the violation of a statute can be negligence per se, the Court must determine whether, as a matter of law, the statute was designed to prevent the harm which occurred. *See Restatement (2nd) of Torts,* § 286, 328B. In this case, the legislative background of the state speed limit and the facts of this case clearly make the negligence per se instruction appropriate.

In December, 1973, during the embargo of oil sales to the United States by Arab members of the Organization of Petroleum Exporting Countries (OPEC), the U.S. Congress established a national 55 m.p.h. speed limit in the Emergency Highway Energy Conservation Act, P.L. 93–239, 87 Stat. 1046. The law was an emergency measure designed to reduce the nation's fuel consumption during the embargo. *See* 1973 *U.S.Code Cong. & Adm.News* 3344, 3345. The Emergency Act was subject to termination by Executive Order when the President determined that the fuel shortage crisis had passed.

One year later, Congress acted to make permanent a national 55 m.p.h. speed limit. Congress sought to do this through an incentives approach, barring federal highway aid to states which failed to enact a maximum state speed limit of 55 m.p.h. The legislative history of this bill clearly shows that Congress sought this more permanent 55 m.p.h. speed limit for both highway safety and fuel conservation reasons. *See* Federal Aid Highway Amendments of 1974, P.L. 93–643, 88 Stat. 2281; 1974 *U.S.Code Cong. & Adm.News* 8011, 8019–20; House Report 93–1567 (Dec. 11, 1974). As the House Public Works Committee stated in its Report on the Bill:

The benefits of the lower maximum speed limit has [sic] been so substantial that the Committee is proposing that it be continued . . .

According to reports from the FEA, over five million gallons of fuel have been saved daily as a result of the reduction in highway speeds and travel on the highways. This should be reason enough to maintain the lower speed limits; however there has also been a sharp reduction in highway fatalities. The National Highway Traffic Safety Administration has estimated a 20-percent drop in traffic fatalities, which represents 1,000 fewer Americans being killed each month.

. . . Results of a National Safety Council study indicate that 46 percent of the reduction is the result of reduced speeds . . . Another study is found that approximately half of the reduction in traffic fatalities is the result of reduced speeds and more uniform speeds . . .

. . . In terms of realizing greater fuel conservation and fatality reduction on the highways, the Emergency Highway Energy Conservation act has been a success.

H.Rep. 93–1567, at 8019.

In response to the National legislation, Pennsylvania adopted the 55 m.p.h. speed limit in P.L. 93–643, making the 55 m.p.h. limit part of the state's motor vehicle code, which exists to further road safety. The state retained this speed limit in 1976 when

it extensively revised the Motor Vehicle Code. (*See* Act of June 17, 1976, P.L. 162, No. 81). Since then, Congress has reiterated its support of the 55 m.p.h. limit as a safety measure in the Surface Transportation Assistance Act of 1978, P.L. 95–599, 92 Stat. 2689. Title II of the act increased appropriation and incentive for enforcement of the law, because of Congress's perception that compliance with the law by individual motorists was declining. Title II has been described by Congress as devoted exclusively to safety matter. *See* House Report 95–1485, 1978 *U.S.Code Cong. & Adm.News* 6575, 6578–79; P.L. 95–599, Title II, secs. 202, 205, 92 Stat. 2689, 2727, 2729–31. House Report 95–1485 emphasizes the safety aspects of the 55 m.p.h. limit. The Report stated:

> This section is intended to achieve greater compliance with the maximum speed limit of 55 mph and to realize, thereby, the fuel conservation *and lifesaving potential* of this law. It amends [23 U.S.C. § 154] to establish a graduated system of minimum standards to measure the effectiveness of State speed limit programs, and a sliding scale penalty to supplement the . . . sanction for States failing to meet published compliance standards.

> \* \* \* \* \* \*

> The committee is concerned that as more and more motorists choose to violate the 55 mph speed limit, the impressive gains of 1974 and 1975 will be eroded, resulting in more highway accidents. *While there is some dispute over the exact nature of the relationship between speed limit and fatalities, the committee is convinced that such a relationship exists.*

H.Rep. 95–1485 at 6621 (emphasis added).

As can be seen from the legislative background, the Court's charge on negligence per se was proper in all respects. *See Restatement (2d) of Torts,* § 288B(1).

### G. *McCreight's Requested Charge Regarding the Motor Vehicle Code*

McCreight's counsel has contended that the Court erred in not instructing the jury that, according to the Pennsylvania Motor Vehicle Code, 75 Pa.C.S.A. § 3303(b), McCreight did not have a duty under the statute to yield or give way to the right while being passed until the vehicle passing her gave a signal of its intent to pass. The Court did not give this instruction because, as the Court pointed out at the time the instruction was denied, there was no claim and no evidence presented that McCreight should have yielded the right of way. Such an instruction had no applicability to the facts presented in this case. However, the Court gave an extensive instruction concerning the duties of motorists (both Galantino and McCreight) under the law so that the jury could determine, on the basis of its findings of fact, whether Mobil and McCreight had been negligent and to what extent each had been causally negligent. Furthermore, there is substantial doubt as to whether the instruction requested by McCreight's counsel is applicable on a 4-lane, divided highway.

### H. *The Evidence of Damages*

Mobil has also contended that the damage award was unsupported by the evidence in that David Marks' likely career path and earnings were not shown with sufficient specificity and that the amount of the verdict was excessive. Both contentions are without merit.

Plaintiff's vocational expert, Dr. Andrew Verzilli, testified that David Marks, based on his academic performance in college prior to the accident, could have followed his professed desire to attend graduate school and obtain a Master's Degree in Business Administration. Dr. Verzilli further testified concerning the amount of future earnings of David Marks, had he obtained his M.B.A. degree. Dr. Verzilli had estimated that David Marks' lost earning capacity was approximately $1,647,000. Defendants cross-examined Dr. Verzilli and presented evidence in an attempt to refute his testimony. Thus, the jury was presented an array of evidence from which, based on objective statistical evidence and testimony

as to David Marks himself, it could determine with sufficient specificity the amount of money he could have earned during his likely working lifetime but for his crippling injuries in the accident.

▮ Proof in support of a damages claim need not be capable of exact ascertainment. *See Blackburn v. Aetna Freight Lines, Inc.,* 368 F.2d 345 (3d Cir. 1966); *Whittle v. Schemm,* 402 F.Supp. 1294 (E.D.Pa.1975) *aff'd mem.,* 538 F.2d 322 (3d Cir.1976); *Weaver v. Ford Motor Co., supra* 382 F.Supp. at 1074–77. The latter two cases underscore that lost earning capacity damages can be determined by a jury even for young plaintiffs (a five-year old in *Weaver* and a college freshman in *Whittle* ). Mobil did not object to Dr. Verzilli's testimony and this Court found his testimony admissible and proper for the jury to consider. As this Court stated in *Weaver:* "there is no need to establish with precision the future earning power [of the plaintiff] before compensation for loss of potential earnings may be awarded." 382 F.Supp. at 1075. *See also Kaczkowski v. Bolubasz,* 491 Pa. 561, 579–80, 421 A.2d 1027, 1037 (1980) (jury can make informed estimate of victim's future earnings based on all lay and expert evidence before it.)

▮ Plaintiff also presented evidence of the pain and suffering incurred by David Marks. As heretofore noted, the jury's verdict was more than $5,147,000. Mobil contends the award is excessive. A new trial on damages may be granted only when the award is so high, so excessive in light of the evidence presented, that it shocks the conscience of the court. *See Gullborg v. Rizzo,* 331 F.2d 557, 561 (3d Cir.1964); *Connor v. Crescent Lighting Corp.,* 61 F.R.D. 62 (E.D.Pa.1973); *Flank v. Walker,* 398 Pa. 166, 157 A.2d 163 (1960). This Court's conscience is not shocked by the verdict. There was ample evidence to show that David Marks incurred pain and suffering prior to the trial and will be subjected to pain and suffering throughout his life. It was uncontested that David Marks, as a result of the accident, suffers from severe brain stem dysfunction with chronic decortication; is a spastic paraplegic; is globally retarded; his speech muscles are paralyzed; he can only attempt to speak infrequently, with great effort, and in a barely decipherable manner; is visually impaired; and will spend the remainder of his days confined to a wheelchair. Furthermore, it was testified that he has at least some awareness of what he once was, a normal college student, and what he is now. His condition is permanent and will remain with him for a projected life expectancy of 49 more years.

If the jury accepted Dr. Verzilli's lost earning capacity figure of $1,647,000, then the pain and suffering component of the award is approximately $3.5 million. This amount is not an excessive pain and suffering award in light of David Marks' catastrophic injuries. Furthermore, a jury is to be given deference by the Court in reaching a damages verdict in a tort action involving personal injuries that are not readily susceptible to a precise measure of damages. *See Armit v. Loveland,* 115 F.2d 308 (3d Cir.1940). In its charge, this Court told the jurors that they were not to "punish the defendants" nor to "enrich the plaintiff", and that their verdict must not be based on sympathy or Mobil's corporate status but rather should be based on the evidence.

Although this verdict is high, this Court will not be heard to say that the pain and suffering which this young man has endured and which he will continue to endure for the remainder of his life, is not worth the dollar amount set forth in the jury's verdict.

I. *Application of Pennsylvania Rule of Civil Procedure 238*

Pennsylvania Rule of Civil Procedure 238 provides, in pertinent part:

> [I]n an action seeking monetary relief for bodily injury, death, or property damage, or any combination thereof, the court or the arbitrators . . . shall
>
> (1) add to the amount of compensatory damages in the . . . verdict of the jury . . . damages for delay at ten (10) percent per annum, not compounded, which shall

become part of the award, verdict, or decision;

(2) compute the damages for delay from the date the plaintiff filed the initial complaint in the action or from a date one year after the accrual of the cause of the action, whichever is later, up to the date of the award, verdict, or decision.

\* \* \* \* \* \*

Except as provided in subdivision (3), damages for delay shall be added to the award, verdict or decision against all defendants found liable, no matter when joined in the action.

\* \* \* \* \* \*

(e) If a defendant at any time prior to trial makes a written offer of settlement in a specified sum with prompt cash payment to the plaintiff, and continues that offer in effect until commencement of trial, but the offer is not accepted and the plaintiff does not recover by award, verdict or decision, exclusive of damages for delay, more than 125 percent of the offer, the court or the arbitrators shall not award damages for delay for the period after the date the offer was made.

Prior to trial, Mobil made to the plaintiff a structured settlement offer with a value considerably less than the amount of the jury's verdict. Thus, plaintiff is clearly entitled to damages for delay, at the rate of 10 percent per year from November 26, 1979 to September 24, 1982. The Court therefore molded the jury verdict to add such damages. The Court's calculation raised the $5,147,000 jury award to $6,583,020.27.

In attacking the Court's application of Rule 238, Mobil contends first that Rule 238 is not a substantive rule of Pennsylvania law and should not be applied in diversity actions in the federal courts. The Third Circuit has squarely rejected Mobil's argument. *See Jarvis v. Johnson,* 668 F.2d 740 (3d Cir.1982). *See also Peterson v. Crown Financial Corp.,* 661 F.2d 287 (3d Cir.1981); *Girard Bank v. John Hancock Mutual Life Insurance,* 524 F.Supp. 884 (E.D.Pa.1981).

This Court will not accept Mobil's invitation to ignore the decisions of the Third Circuit and will continue to apply Rule 238 as a rule of substantive law applicable to diversity cases in which Pennsylvania law is applicable.

Mobil also contends that Rule 238 is unconstitutional. Specifically, Mobil claims that Rule 238 denies it due process by imposing "damages for delay" even if Mobil has not acted to delay the case, and that an award of prejudgment interest violates Mobil's Seventh Amendment right to a jury trial. The Pennsylvania Supreme Court rejected this attack on the constitutionality of Rule 238 in *Laudenberger v. Port Authority of Allegheny County,* 496 Pa. 52, 436 A.2d 147 (1981). In *Laudenberger,* the state Supreme Court concluded that Rule 238 did not deny the parties due process, it merely was a prejudgment interest provision coupled with a settlement offer provision designed to encourage both sides to settle meritorious cases. Prejudgment interest has long been held to be constitutional and has been well established in many areas of law. *See, e.g., American Enka Co. v. Wicaco Machine Corp.,* 686 F.2d 1050, 1056–58 (3d Cir.1982). The award of prejudgment interest merely compensates the prevailing party for the time value of the money judgment because the losing party has in effect held the winner's money and earned interest on it during the pendency of the trial. This Court, like every other Court which has viewed prejudgment interest rules and statutes, can find nothing unconstitutional in this concept.

Likewise, Mobil's argument that Rule 238 impairs the right of jury trial is not persuasive. In this matter, all parties had the opportunity to present their case to the jury. The jury was instructed to determine the amount of David Marks' damages irrespective of interest. Mobil apparently would like the jury to be instructed about pre- and post-judgment interest rates and settlement offers so that the jury might take this into account in light of the parties' settlement activities prior to the verdict. Mobil has cited no basis in law for introduc-

ing these extraneous elements into the jury's calculations. In fact, the law expressly forbids bringing such matters before the jury. For example, Federal Rule of Evidence 408 specifically makes inadmissible at trial any evidence concerning the settlement negotiations and offers of the parties. Furthermore, the Pennsylvania Supreme Court in *Kaczkowski v. Bolubasz,* 491 Pa. 561, 421 A.2d 1027 (1980), has stated that juries in damages cases should be instructed not to reduce awards to present value, in part because such a calculation requires extensive evidence concerning future rates of interest and inflation and because it may tend to confuse a jury and divert it from its primary function, the determination of a lump sum total of compensatory damages. Mobil's suggestion runs counter to both F.R.E. 408 and *Bolubasz.*

While this Court has not discussed herein all of the contentions which were raised by the defendants in their post-trial motions, it has, however, reviewed the entire record and considered all the grounds alleged by the defendants in their motions and finds that none of them either singly or collectively have sufficient substance to merit any further discussion as a basis for setting aside the jury's verdict in this case. An appropriate Order will be accordingly entered.

### ORDER

AND NOW, this 25th day of April, 1983, upon consideration of defendant Mobil Oil Corporation's Motion for Judgment Notwithstanding the Verdict and Motion for a New Trial and upon consideration of third-party defendant Barbara Lou McCreight's Motion for Judgment N.O.V. and Motion for a New Trial, and plaintiff's responses to the aforesaid motions, for the reasons set forth in this Court's Memorandum of April 25th, 1983,

IT IS HEREBY ORDERED:

1. Defendant Mobil Oil Corporation's Motion for Judgment N.O.V. is DENIED;

2. Defendant Mobil's Motion for a New Trial is DENIED;

3. Third-Party Defendant Barbara Lou McCreight's Motion for Judgment N.O.V. is DENIED;

4. Third-Party Defendant McCreight's Motion for a New Trial is DENIED.